Hillsborough,
No. 4729.

BESSIE M. KACAVISTI

*v.*

SPRAGUE ELECTRIC CO. *& a.*

Argued October 6, 1959.

Decided November 3, 1959.

*Earley & Flynn, Margaret Q. Flynn,* and *Nicholas Pantelas* (*Mrs. Flynn* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Charles J. Dunn* (*Mr. Dunn* orally), for the defendant.

BLANDIN, J. The plaintiff contends that the defendants, who took no exceptions during the trial nor to the denial of their motion for a "directed verdict," and who made no motion to set aside the decree, now have no right to appeal the decision of the Superior Court. *Perreault* v. *Lyons,* 98 N. H. 317. However, there are exceptions to this general rule, especially in cases tried before the court without a jury where a single issue is plainly raised. *Eastman* v. *Waisman,* 94 N. H. 253. In the present case, the record, including the defendants' exceptions to the failure of the Court

to grant their request for findings and rulings, and to certain findings and rulings made, shows that the question of whether the plaintiff suffered an accidental injury within the meaning of RSA 281:2 III was the basic issue before the Court. Under our discretionary procedure, we shall therefore consider it. *Wilson* v. *Goodnow*, 98 N. H. 110.

There seems little point in reviewing the innumerable conflicting cases and doctrines, based on different policies and statutes, discussing what is an accident within the meaning of workmen's compensation laws (anno. 122 A. L. R. 839), since they are not controlling here. We shall therefore confine ourselves to an examination of the facts most favorable to the plaintiff which could be found on the record before us, and the application of our law to these facts. In so doing, we have in mind the rule that the Court's findings of fact must stand unless no reasonable person could have made them. *Perreault* v. *Lyons*, 98 N. H. 317.

The evidence warranted a finding that the plaintiff possessed a normal thumb before going to work for the defendant, Sprague Electric Company. While she worked for this defendant, beginning in March, 1956, and in the course of her employment, the under portion of the first phalanx of her right thumb was subjected to repeated trauma by a hard, small roundish metal knob which was pressed, twisted and turned in the yielding flesh of the under part of the thumb. This procedure, necessitated by her duty to clean little wires known as "leads," shortly began to cause pain in her thumb. It became sore, blisters appeared, and when she pressed the knob to clean the wires, it hurt her "a lot." In August, 1956, the thumb "started to snap." The climax was reached on September 29, when after experiencing much pain, the hand swelled up so that she went to a doctor that evening. He recommended an immediate operation, to which the plaintiff submitted, and she did not return to work until the following January 7, 1957.

We have, then, a situation where repeated trauma, applied by an external force, all arising out of and in the course of her employment, resulted in pain and swelling on a particular day, which became so intolerable on that day as to be disabling and to result in incapacity to work. Such has been held an accident within the meaning of RSA 281:2 III. *Walter* v. *Hagianis*, 97 N. H. 314, 317-318. Even though the causation of her disability was gradual and she experienced pain prior to September 29, the acute manifestation of the injury, arising on that specific date and thereafter

disabling her from her work, was an accidental injury. *Walter* v. *Hagianis, supra,* 317; see *Bolduc* v. *Company,* 96 N. H. 235; *Eaton* v. *Proctor,* 85 N. H. 398, 399.

There remains plaintiff's exception to the Court's finding that there is no evidence from which to determine her loss of earning capacity due to her permanent disability. The record discloses many essential facts bearing on this question. These include her limited education, the nature of the work she had previously done, and the amount of permanent disability — estimated at 10 per cent — in the loss of use of her right thumb. Also, there was testimony that the thumb is the most important element in the hand, that it constitutes 40 per cent of the value of the hand, and that there was a functional loss of 25 per cent of the full flexion of the distal inter-phalangeal joint of her right thumb.

It was undisputed that the plaintiff cannot grasp objects as with a normal hand, that she will have difficulty with fine work and small items, with pinching and, in short, that she cannot "do anything as well with the thumb as she could before she was injured." Finally, she testified that since her return to work she has had to shift jobs several times because her thumb "was bothering me too much" to do the task assigned.

In *Dunbar Fuel Co.* v. *Cassidy,* 100 N. H. 397, we held in similar circumstances to the present that direct evidence of loss of earning capacity is not required as the basis for a finding whether such has occurred, and that the Court should use its judicial discretion in determining the loss. *Id.,* 402, 403. See also, *Desrosiers* v. *Company,* 97 N. H. 525. We hold this principle to be applicable here. The Court, on the basis of the evidence before it, should determine the amount of loss of the plaintiff's earning capacity and make an award accordingly under RSA 281:25. This should be measured by the effect upon her ability to earn and not by the percentage of her permanent disability. "Degree of physical disability is not the measure by which to determine the amount of an award of compensation." *Gagne* v. *Company,* 87 N. H. 163, 166. The order is

*Remanded.*

All concurred.