Compensation Appeals Board
No. 93-318

# APPEAL OF BURLEIGH BRIGGS
## (New Hampshire Department of Labor Compensation Appeals Board)

July 6, 1994

*Richards, Gawryl & MacAllister*, of Nashua (*Janine Gawryl* on the brief and orally), for the petitioner.

*Devine & Nyquist*, of Manchester (*Corey Belobrow* on the brief and orally), for Manville Sales Corporation.

*Wadleigh, Starr, Peters, Dunn and Chiesa*, of Manchester (*Dean B. Eggert* on the brief and orally), for B.N.Z. Materials, Inc.

THAYER, J. The petitioner, Burleigh Briggs, appeals from a decision of the New Hampshire Department of Labor Compensation Ap-

peals Board (board) denying him coverage for an osteoarthritic condition in his knees that he contends was exacerbated to the point of disability by his employment. The petitioner argues that the board erred in: (1) finding no accidental injury; (2) applying an incorrect standard of medical and legal causation; and (3) refusing to hold the record open for submission of additional medical reports after the hearing. Defendant Manville Sales Corporation (Manville) cross-appeals, arguing that it should be released from liability because it did not receive notice of the claim within the statutorily required period. We reverse in part, vacate in part, and remand.

From January 15, 1968, until the time of his disability on February 2, 1988, the petitioner worked in a plant owned first by Manville Corporation and then, from January 1, 1988, by B.N.Z. Materials, Inc. (B.N.Z.). The petitioner worked as a "dry mix man," spending eight hours each day lifting and carrying heavy weights and climbing numerous flights of stairs. Prior to his disability, the petitioner incurred several injuries to his knees. A football injury to his left knee in 1952 required surgery. He injured his left knee at work in 1969, at which time an X ray revealed mild arthritic changes. He injured his right knee in 1981 also at work, and X rays taken at the time showed "degenerative changes" in the knee. By 1987, there was evidence of arthritis in both knees, and the petitioner was treated for pain and crackling in his left knee as a result of this condition. On February 2, 1988, the petitioner's knees gave way while he was performing his usual job. He reported the incident to his B.N.Z. supervisor and then saw the company doctor, who referred him to Dr. Joseph. Dr. Joseph determined that the petitioner had severe osteoarthritis in both knees, and operated on the left knee to attempt to correct the problem. The petitioner then changed his treating physician to Dr. Lynn. He has been unable to work since February 2, 1988.

The petitioner initially sought benefits only from B.N.Z. He made no claim against and made no attempt to give direct notice to Manville until after his initial department of labor hearing against B.N.Z. on February 25, 1991. The petitioner ultimately notified Manville of his claim on December 26, 1991. His separate claims against B.N.Z. and Manville were combined for the purposes of appeal before the board.

In advance of the hearing before the board, the petitioner provided the board, B.N.Z. and Manville with medical reports from his two treating physicians, Dr. Joseph and Dr. Lynn, both of whom opined that the petitioner's heavy labor exacerbated his knee problems and caused them to become disabling. Five days before the

hearing, Manville provided to the other parties and to the board the medical report of Dr. Emond, who, based upon a review of the petitioner's medical records, stated that although a specific sporting or work-related injury might be a trigger, heavy labor itself is not causally related to osteoarthritis. The petitioner at first objected to the submission of this report so close to the hearing date but withdrew his objection at the hearing. The petitioner also obtained and submitted at the hearing a report from Dr. Wolf who, based upon a review of the petitioner's medical file, disagreed with Dr. Emond's report and opined that the petitioner's "osteoarthritis is more severe as a result of his job, than it would have been had he experienced the normal aging process of a desk worker . . . [and that] it is more likely than not that twenty years of heavy manual labor will aggravate a preexisting osteoarthritic condition of the knees." The petitioner then sought to have the board hold open the record for the submission of an additional responsive report from Dr. Lynn, but the board refused to do so.

The board made numerous findings in its initial decision, the following of which form the basis for this appeal. It determined first that the petitioner, by reporting his knee injury to his supervisor at B.N.Z., "did everything he could have reasonably been expected to do in promptly reporting the incident," and that he had therefore given proper and timely notice to both B.N.Z. and Manville. The board then determined that the petitioner failed to meet his burden to prove "that the incident 2/2/88 was an incident of employment which caused the injury from a legal standpoint," or that the repeated trauma of the daily physical demands of the petitioner's job rose to the level of an accidental injury. We understand the last finding to turn on the accidental quality of the petitioner's injury rather than on a determination of medical or legal causation. The board noted that repeated trauma may result in a "compensable injury even though there was not a discreet incident," *see, e.g., Kacavisti v. Sprague Electric Co.*, 102 N.H. 266, 269–70, 155 A.2d 183, 185 (1959), but, apparently in part because of the petitioner's preexisting degenerative condition, found that the petitioner had failed to show an accidental injury. The board found that the petitioner had had several injurious incidents at work, yet

> "was able to return to work and apparently worked without missing any time thereafter because of problems with his knees. The apparent freedom from disabling injury was exhibited throughout his employment in spite of the heavy demands of the work. In light of this finding the Board was not

convinced that the daily demands of the job rose to the level of an accidental injury."

After the board issued this decision, the petitioner moved for a rehearing in part because the board erroneously required a traumatic event to show an accidental injury. The board denied the motion, stating:

"While recognizing that stress at work can cause a preexisting condition to become disabling, the Board stands by its decision that the apparent freedom from disabling injury enjoyed by claimant throughout his employment in spite of the heavy demands of the work belie claimant's position that the work stressors were the precipitating factor in claimant's disability which commenced February 2, 1988."

This order suggests that the board accepted that cumulative work-related stress may have an impact on a preexisting condition so as to cause compensable disability even absent a traumatic event. Thus, the analysis may be seen as one of causation. Because the board apparently addressed both accident and causation issues in its opinions, we will address both here.

■ We do not overturn an agency decision or order, absent an error of law, unless it is clearly unjust or unreasonable. RSA 541:13 (1974); *Appeal of Stetson*, 138 N.H. 293, 295, 639 A.2d 245, 247 (1994).

■■ We first turn to the accidental quality of the petitioner's injury. To obtain workers' compensation, the claimant must prove that the injury was accidental. *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 226, 400 A.2d 1163, 1165 (1979). Regardless of the presence of a pre-existing degenerative condition, an accidental injury within the meaning of the workers' compensation law need not be traumatic or dramatic, but rather may arise from routine activities that result in an unexpected effect. *See id.* at 226, 400 A.2d at 1165–66. A disability may develop gradually, and with the presence of some pain, but an acute manifestation occurring on a particular day which is so intolerable that it prevents the claimant from working is considered an accidental injury. *Kacavisti*, 102 N.H. at 269–70, 155 A.2d at 185. That the petitioner had experienced no loss of work time prior to the disability does not support the board's finding of no accident. Nothing in the record suggests that the injury was other than accidental, in the sense articulated by these cases, and to the extent that the board's decision was based upon the lack of an accident, we reverse.

■ The petitioner also argues that the board erred in determining that causation had not been proven. As we noted above, the board stated that

> "the apparent freedom from disabling injury enjoyed by claimant throughout his employment in spite of the heavy demands of the work belie claimant's position that the work stressors were the precipitating factor in claimant's disability which commenced February 2, 1988."

Because this appears to be a determination that the petitioner failed to prove causation, we will address it as such. To show causation the petitioner bore the burden of proving that the cumulative work-related stress to the petitioner's knees probably caused or contributed to his disability under a two-pronged test. *See Cheshire Toyota/ Volvo, Inc. v. O'Sullivan*, 129 N.H. 698, 531 A.2d 714 (1987); *Steinberg*, 119 N.H. 223, 400 A.2d 1163. Under this test, the petitioner must "prove legal causation, that is, that [his] injury is work-connected, and medical causation, that is, that [his] disability was actually caused by the work-related event." *Tzimas v. Coiffures By Michael*, 135 N.H. 498, 500, 606 A.2d 1082, 1083 (1992) (quotation omitted); *see Averill v. Dreher-Holloway*, 134 N.H. 469, 472, 593 A.2d 1149, 1151 (1991). The board's decision, based upon the petitioner's lack of time lost from work and previous disability, is incorrect under either test.

■■ "The legal causation test defines the degree of exertion that is necessary to make the injury work-connected. The test to be used depends upon the previous health of the employee." *Steinberg*, 119 N.H. at 230–31, 400 A.2d at 1168 (citation omitted). To prove legal causation, where, as here, the petitioner concedes a preexisting weakness or condition, he must show that his work-related activities substantially contributed to his disability by showing that the work-related activities required more exertion than his non-work-related activities. *See O'Sullivan*, 129 N.H. at 701, 531 A.2d at 715; *Steinberg*, 119 N.H. at 231, 400 A.2d at 1168. That the petitioner did not show a continuing series of disabilities from work is not relevant to a determination of legal causation. The board's findings that the petitioner's job involved a lot of twisting, stair climbing, and lifting, and that "the claimant was subjected to no unusual or heavy stressors outside of his job" imply that the board, applying the proper standard, would have found legal causation. It could not reasonably be found otherwise based upon the record. Thus, we reverse the decision to the extent it is based upon a finding that legal causation was not shown.

■■ To prove medical causation, the petitioner must show that the work-related activities either caused or contributed to his disability as a matter of medical fact. *Stetson*, 138 N.H. at 296, 639 A.2d at 248. The board, however, cited no medical evidence to support its findings but rather relied upon the petitioner's work performance and lack of absenteeism. This was error. The medical causation of a knee injury of this nature is a matter properly within the province of medical experts, and the board was required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion. *Town of Hudson v. Wynott*, 128 N.H. 478, 484–85, 522 A.2d 974, 978 (1986). We remand for the board to reconsider this issue.

We also reverse the board's ruling that the "claimant did everything he could reasonably have been expected to do in promptly reporting the incident" to his managers within B.N.Z., and thus that he had given adequate notice to Manville. Manville argues that the petitioner's admitted failure to give Manville notice within the two-year statutory period barred any claim against Manville. We agree. The statute in effect at the time of the injury, RSA 281:16-a (1987) (recodified as RSA 281-A:19 (Supp. 1993)) provides:

> "Claims for benefits under this chapter shall be barred unless notice of injury is given to the employer within 2 years from the date of injury; provided, however, that if the nature of the injury and its possible relationship to the employment are not known to the employee, the time for filing notice shall not begin to run until the earlier of the following:
>
> I. The date the employee knows, or by reasonable diligence should know, of the nature of the injury and its possible relationship to the employment; or
>
> II. In the event of death, the date any dependent knows, or by reasonable diligence should know, of the nature of the injury and its possible relationship to the employee's employment."

Failure to comply with this notice provision bars the claim. *Bowlan Lumber Co. v. Lemire*, 120 N.H. 465, 468, 416 A.2d 1371, 1373 (1980). Here, the petitioner did not merely make a technical error in the form of notice given but rather gave Manville no notice.

■ The petitioner does not fit into either statutory exception. The petitioner notified B.N.Z. of his injury immediately but admits in his brief that he did not even attempt to notify Manville until after February 25, 1991, and did not actually notify Manville until Decem-

ber 26, 1991. The petitioner argues that he notified Manville as soon as he knew that the workers' compensation carrier had changed as a result of the sale of the plant from Manville to B.N.Z. This argument is unavailing. The petitioner admitted to knowing that his employer had changed; it is the employer, not the carrier, that must be notified of the claim. *See* RSA 281:16-a (1987). Moreover, the petitioner does not argue that he lacked notice of his injury or that it might be work-related. The board's decision that Manville was given timely notice of the claim under the statute is reversed, and Manville may not be held liable for this claim.

 Because we remand for reconsideration on the present record rather than for a rehearing, we address the petitioner's argument that a department of labor rule which allowed Manville to submit a medical report five days before the hearing denied him due process, and that the board should have held open the record to allow the petitioner to submit an additional medical report in rebuttal. At the outset of the hearing, the petitioner withdrew his objection to the submission of Dr. Emond's report. He has thus not preserved any objection to the admission of this report for appeal. *LeFavor v. Ford*, 135 N.H. 311, 313, 604 A.2d 570, 572 (1992). The issue remaining, therefore, is whether the board erred in refusing to hold the record open.

 The department of labor rules allow, but do not require, the board to accept submission of additional documentation within ten calendar days of the hearing. N.H. ADMIN. RULES, Lab 206.05(e), (f) (Supp. 1993). In the instant case, the petitioner had several years from the time of injury to the time of the hearing in which to obtain supporting medical reports. The petitioner's treating physicians had in fact supplied letters stating their opinion that his osteoarthritis had been exacerbated by work-related activities. These letters were accepted into the record. Further, after receipt of Dr. Emond's report, the petitioner was able to obtain a letter from Dr. Ralph Wolf specifically referencing Dr. Emond's opinion, impliedly disagreeing with it, and supporting the petitioner's theory that his osteoarthritis was made worse by his employment. This letter was accepted into the record without objection. We hold that under the facts of this case, the board did not abuse its discretion by refusing to hold the record open for the submission of an additional report. *See Petition of Grimm*, 138 N.H. 42, 55, 635 A.2d 456, 464–65 (1993).

 Finally, we address the applicability of the "last injurious exposure" rule to the instant situation. The statute provides, in pertinent part, that

"where compensation is payable for an injury other than an occupational disease, which aggravates a pre-existing physical condition, the employer in whose employment the employee sustained the most recent injurious incident and the insurance carrier, if any, on the risk when such injurious incident occurred, shall alone be liable for benefits allowable under this chapter, without right to contributions from any prior employer or insurance carrier."

RSA 281:38-a, III (1987) (current version at RSA 281-A:46, III (Supp. 1993)). B.N.Z. argues that it cannot be liable for the petitioner's injury because the petitioner's preexisting condition had not stabilized at the time of the shift in employers, relying upon *Town of Hudson v. Wynott*, 128 N.H. 478, 522 A.2d 974, *Rumford Press v. Travelers Ins. Co.*, 125 N.H. 370, 480 A.2d 162 (1984), and *Town of Goffstown v. Morgrage*, 122 N.H. 591, 448 A.2d 385 (1982). These cases do not apply here. In each case, the petitioner's condition at the time of the change in employers or insurers had been caused by a specific compensable work-related injury that remained either unstable or debilitative at the time of a later disability. Disability in these cases was held to relate back to the earlier work-related incident because of the lack of an intervening traumatic event that would show an independent cause of the new disability. *See Wynott*, 128 N.H. at 479–80, 522 A.2d at 974–75; *Rumford Press*, 125 N.H. at 372–73, 480 A.2d at 163; *Morgrage*, 122 N.H. at 595, 448 A.2d at 387. Cumulative trauma, however, does not result in injury under New Hampshire law until the employee is unable to continue working. *Kacavisti*, 102 N.H. at 269–70, 155 A.2d at 185. The same rule applies where the claimant has a preexisting condition not caused, but rather aggravated or exacerbated, by cumulative work-related activities. *Walter v. Hagianis*, 97 N.H. 314, 317–18, 87 A.2d 154, 157 (1952); *see also Servetas v. King Chevrolet-Oldsmobile Co.*, 117 N.H. 1061, 1063, 381 A.2d 750, 751 (1977); *Jackson v. Emile J. Legere, Inc.*, 110 N.H. 252, 254, 265 A.2d 18, 20 (1970). RSA 281:38-a, III (1987) thus requires that when the claimant is exposed to cumulative trauma resulting in disability, the employer at the time the disability arises bears the burden of any workers' compensation benefits owing. *See McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 376 (Iowa 1985); *Gilbert v. Reynolds Metals Co.*, 59 Mich. App. 62, 69, 228 N.W.2d 542, 545 (1975); *Aseltine v. Leto Constr. Co.*, 43 Mich. App. 559, 561, 204 N.W.2d 262, 263–64 (1972); *Utica Square Salon of Beauty v. Barron*, 595 P.2d 459, 462 (Okla. Ct. App. 1979); 4 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 95.00, 95.20 (1993).

632

Because we hold that the board erred by applying an incorrect legal standard and by ruling that Manville was on notice of the petitioner's alleged injury, we reverse in part, vacate in part, and remand for findings in accordance with this opinion.

*Reversed in part, vacated in part, and remanded.*

All concurred.