Compensation Appeals Board
No. 98-452

APPEAL OF STEPHEN NEWTON

(New Hampshire Compensation Appeals Board)

March 26, 2001

*Normandin, Cheney & O'Neil*, of Laconia (*A.G. O'Neil, Jr.* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Paul L. Salafia* and *Donna M. Head* on the brief, and *Mr. Salafia* orally), for the respondent.

BROCK, C.J. The petitioner, Stephen Newton, appeals the decision of the New Hampshire Compensation Appeals Board (board) that the date of his injury is when he first sought medical treatment rather than when he suffered a loss in earning capacity. Because the board failed to make a finding regarding the nature of the petitioner's injury, we remand.

We recite the facts as found by the board or as presented in the record. The petitioner has been employed as a mechanic for the respondent, Benson Auto Body, since 1985. His job required repetitive use of his upper extremities, including working in overhead positions. Beginning in April 1995, the petitioner began noticing problems in his right shoulder. The problems intensified, and the petitioner sought medical treatment for his condition from Dr. Gary Francke in July 1995.

On a First Report of Injury filed on July 19, 1995, the respondent noted that the petitioner had "strained right shoulder wile [*sic*] reaching overhead working under a vehicle." The petitioner did not lose any time from work. The petitioner next saw Dr. Francke on August 9, but again lost no time from work. No restrictions or job modifications were imposed, and the respondent continued to pay him the same wage. In fact, sometime between August 9, 1995, and April 1996, the respondent *increased* his weekly wage from $614.00 to $660.00.

The petitioner saw Dr. Francke again on April 3, 1996. His symptoms had increased to include pain radiating into his fingers and the loss of sensation in one of his fingers. Dr. Francke issued work restrictions for the first time, and referred the petitioner to a neurologist, Dr. Christopher Martino. On April 5, 1996, a second First Report of Injury was completed giving a date and time of injury of April 3, 1996. On May 6, 1996, Dr. Martino recommended that the petitioner stop working, which he did.

The respondent's workers' compensation insurance carrier paid all of the medical bills related to treatment the petitioner received for his shoulder injury. The carrier also paid the petitioner temporary total disability benefits for the time petitioner was out of work. The carrier initially based the award on a weekly income of $660 which the petitioner was receiving when he was first issued work restrictions in 1996. However, the carrier soon amended its calculation, and based the award on a weekly income of $614, which petitioner was receiving when he first sought medical treatment in 1995.

The petitioner returned to work in September 1996 in a modified position. When the petitioner's work position was modified, his

hourly wage decreased. When he returned to work, the respondent's workers' compensation carrier compensated the petitioner for his temporary partial disability and, again, based the benefits calculation on a weekly income of $614.00.

The petitioner challenged the carrier's use of the 1995 wage to calculate his disability benefits. A department of labor hearing officer ruled that the 1995 wage was the proper wage, and after a *de novo* hearing, the board concurred. In declining to apply *Briggs*, the board stated, in pertinent part:

> [T]he claimant argued that [*Appeal of Briggs*, 138 N.H. 623 (1994),] requires the date of injury to be determined from April 1996. However, the medical records do not reflect a period of significant stabilization, and said medicals do not support the claimant's position that the claimant suffered a cumulative trauma injury of a date later than July 1995.
>
> . . . .
>
> Because of the claimant's ongoing medical treatment, the panel finds that *Briggs* is not applicable in this case . . . . The panel determines that the claimant's date of injury is indeed July 1995.

After an unsuccessful motion for reconsideration, the petitioner appealed. He argues that under both *Appeal of Briggs*, 138 N.H. 623 (1994), and *Appeal of Wausau Ins. Cos.*, 143 N.H. 478 (1999) (decided after the board's decision in this case), his date of injury was April 1996, when his earning capacity was first diminished as a result of his cumulative trauma injury. The respondent argues that *Briggs* and *Wausau* do not apply because the 1996 injury was a recurrence of a discrete injury sustained in 1995, not a cumulative trauma injury. The respondent further argues that *Briggs* and *Wausau* should be interpreted narrowly and found inapplicable in this case.

■ "We will overturn the board's decision only foi errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Wausau*, 143 N.H. at 480; *see* RSA 541:13 (1997). "The board's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the board's decision reasonably could have been made." *Wausau*, 143 N.H. at 480.

■ The Workers' Compensation Law defines different categories of disability entitling a claimant to indemnity benefits. *See* RSA

281-A:28, :28-a, :31, :31-a (1999). A claimant who sustains a work-related injury that is totally disabling, but temporary in nature, may receive compensation for loss of wages based upon the claimant's average weekly wage. *See* RSA 281-A:28 (1999). A claimant who has suffered a work-related injury that allows the claimant to return to work, but with a reduced earning capacity because of the injury may also receive compensation. *See* RSA 281-A:31 (1999); *Appeal of Lalime*, 141 N.H. 534, 538 (1996). In order to calculate either total or partial disability benefits, it is necessary to determine both the claimant's average weekly wage and the date of the claimant's injury. *See* RSA 281-A:28, :31, :15, I (1999).

■■ Because the date of a claimant's injury is not always apparent, to determine the date of injury, it is necessary to determine the nature of the injury. *See Wausau*, 143 N.H. at 480. The nature of the petitioner's injury is the central issue in this case. If the petitioner suffered a discrete injury in July 1995, which remained unstable and then "recurred" in 1996, then the date of injury would arguably "relate back" to the original 1995 injury. *See Town of Hudson v. Wynott*, 128 N.H. 478, 486 (1986). If, on the other hand, the petitioner suffered from a cumulative trauma injury, then the date of injury would arguably be the date the injury caused a diminished earning capacity. *See Wausau*, 143 N.H. at 480. We are unable to discern from the board's order the precise factual and legal bases for its decision. Although the record suggests that the petitioner suffered from a cumulative trauma injury, nowhere in its order does the board make a specific finding regarding the nature of the petitioner's injury. Thus, we cannot determine whether the board's order is based on a finding that the petitioner sustained a discrete injury, or a cumulative trauma injury. Because we "do not find facts in the first instance," *Dunn v. CLD Paving, Inc.*, 140 N.H. 120, 123 (1995), we remand this case to the board for a determination of the nature of the claimant's injury. We otherwise retain jurisdiction of the appeal.

Because we remand this case to the board for its further consideration, we do not, at this time, reach the respondent's argument that *Briggs* and *Wausau* should be interpreted narrowly and be found inapplicable in this case.

*Remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.