Merrimack
No. 83-349

RUMFORD PRESS & a.

v.

THE TRAVELERS INSURANCE COMPANY

August 9, 1984

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Lee C. Nyquist* on the brief and orally), for American Mutual Insurance Company.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Charles J. Dunn* and *Katherine M. Hanna* on the brief, and *Ms. Hanna* orally), for the defendant.

BATCHELDER, J.   This appeal stems from a claim for workers' compensation. *See* RSA chapter 281. The only issue raised on appeal is whether the master erred in his determination of which of two insurance carriers is liable under RSA 281:38-a (Supp. 1983) for the payment of the claimant's benefits. The Master (*Charles P. Bauer*, Esq.) recommended that the plaintiff American Mutual Insurance Company (American) be held responsible for paying the entire workers' compensation award, and the Superior Court (*Dunn*, J.) approved the master's recommendation and report. We affirm.

The claimant, Harold Goulding, sustained work-related physical injuries on February 23, 1980, while he was employed by Rumford Press (Rumford). At that time, American was the workers' compen-

sation carrier for Rumford. As of November 1, 1980, the defendant, Travelers Insurance Company (Travelers), became the carrier for Rumford.

■■ The law governing the liability of successive carriers of workers' compensation insurance is RSA 281:38-a, III (Supp. 1983), which provides in pertinent part:

> "[T]he employer in whose employment the employee sustained the most recent injurious incident and the insurance carrier, if any, on the risk when such injurious incident occurred, shall alone be liable for benefits allowable under this chapter, without right to contribution from any prior employer or insurance carrier."

In *Town of Goffstown v. Morgrage*, 122 N.H. 591, 448 A.2d 385 (1982), we stated that when there are two or more successive insurance carriers, "only one can be charged for the whole compensation which results from the compensable injury . . . . In the absence of a second independent intervening contributing cause of disability, the employer's insurance carrier on the risk at the time of the original compensable injury is liable for the employee's continuing incapacity." *Id.* at 593–94, 448 A.2d at 386.

The facts as found by the master indicate that on February 23, 1980, Goulding slipped on water on the floor at Rumford while he was throwing certain materials on a table to be "water-coated." Although he did not fall to the ground, he claims that his back was badly twisted. While he felt immediate pain in his back, he continued working through the day and then filed an accident report.

Goulding continued to work with some pain and discomfort through June 3, 1980, when an increase in the pain caused him to stop working for approximately four weeks. X-rays of Mr. Goulding's spine were taken on June 24, 1980, showing a compression fracture of one vertebra. Goulding's physician, Dr. Robert Rainie, permitted Goulding to return to work again on June 30, 1980, and told him to proceed with caution and to impose some limitations on his physical activities. Goulding worked for only two weeks, and on July 14, 1980, was forced to stop working due to the increased pain and discomfort in his back. He remained out of work for approximately eight weeks and returned to work on September 15, 1980.

Goulding continued to work, despite continued pain and discomfort, until December 22, 1980, when he lifted a cover at Rumford and "felt a crunch" in his back as if "something let go." The following day, Dr. Rainie referred Goulding to Dr. H. James Forbes, an orthopedic surgeon. X-rays of Goulding's spine were taken on January 5, 1981. He remained out of work for approximately four weeks,

until January 23, 1981, when he went back to work. He experienced continuing pain and discomfort until he stopped working on February 23, 1981. According to Goulding, he has not worked since that date, due to the continuing back pain and disability.

Goulding testified that during those periods of his employment after February 23, 1980, his back remained sore, and he was careful at work. He also indicated that he was restricted in certain activities both on and off the job. During the two periods when he was out of work between February 23, 1980, and December 22, 1980, he remained in bed due to his back condition for extensive periods of time. Goulding stated that he had aggravations or "flare-ups" after the February 1980 incident, including additional episodes of back pain brought on by sneezing or coughing. According to Goulding, his medical condition has been "up and down" since February 1980; however, he was able to recall specifically the "clear cut incident" of back pain which occurred on December 22, 1980, while working at Rumford.

American argued that the symptoms experienced by the claimant after lifting the cover at Rumford on December 22, 1980, were indicative of a second separate back injury, which constituted an independent or intervening cause of his disability. The issue for the master with respect to insurance coverage was whether the December 22, 1980 incident was a cause of the disability separate from and independent of the February 23, 1980 incident. The master, applying to the evidence the standard we announced in *Town of Goffstown v. Morgrage*, 122 N.H. at 593–94, 448 A.2d at 386, rejected American's argument and concluded: "Since American was the insurance carrier on the risk on February 23, 1980, and since no second injurious incident occurred on or after December 22, 1980, at which time Travelers was on the risk, American is responsible for paying the entire claim."

The parties now agree that Goulding was totally disabled as of July 1981. Expert testimony from all sides established that the medical source of this disability was the presence of multiple compression fractures to Goulding's vertebrae. The parties' experts also agreed that the X-rays taken of Goulding on June 24, 1980, reveal a compression fracture of one vertebra, which probably related to the work-related injury of February 23, 1980. The X-rays taken in January 1981 show the presence of compression fractures to three additional vertebrae, thus indicating that Goulding's back condition had worsened significantly after the first incident. X-rays of Goulding's spine taken later show the presence of additional compression fractures.

At the hearing in the superior court, American sought to tie the three additional fractures shown on the January 1981 X-rays to the December 1980 incident. The master rejected American's theory, finding instead that Goulding's disability resulted from the aggravation of an underlying condition, an osteoporotic spine, by the February 1980 incident. The master stated that the pain related to this incident created a "vicious medical cycle" of "increased pain, increased inactivity, increased idiopathic osteoporosis, and continuing multiple compression fractures . . . ." The master concluded that "the evidence supports a finding that the symptoms suffered in December 1980 were part of continuing problems which related back to February 1980" and thus were not to be seen as separate or distinct from the February 1980 injury.

American does not contest any of the master's findings of fact; rather, American asks us to rule, based on these findings, that the master made an error of law. According to American, the master erred when he found that Goulding, on December 22, 1980, suffered an injury, i.e., an acute muscle strain, yet refused to find that this injury constituted a second independent "injurious incident." RSA 281:38-a, III (Supp. 1983).

In effect, however, American is asking the court either to overrule the master's finding that the December 1980 incident was not causally related to Goulding's disability or to read out of "the most recent injurious incident" rule the causation requirement. We decline to do either.

Determining whether a claimant's disability causally derives from an incident or whether that incident represents a recurrence of an earlier injury, which is the true cause of the disability, is often problematical. *See* 4 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 95.22 (1984). Eliminating the causation requirement may make the fact-finder's task easier, but this could also lead to unintended results. This case is not unique; in fact, it resembles what Professor Larson describes as "the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion." 4 A. LARSON, *supra* § 95.23 at 17-135. *See, e.g., United Pac. Reliance Ins. Co. v. Banks,* 64 Or. App. 644, 669 P.2d 831 (1983); *Poole v. Statler Tissue Corp.,* 400 A.2d 1067 (Me. 1979); *Willette v. Statler Tissue Corp.,* 331 A.2d 365 (Me. 1975).

In reviewing cases involving injuries to the same anatomical area, other courts have asked whether a given incident constitutes an aggravation of a pre-existing condition that has stabilized or, rather, a worsening or exacerbation of an existing condition. *See*

*Belton v. Carlson Transport,* 658 P.2d 405 (Mont. 1983); *Garner v. Atlantic Building Systems, Inc.,* 142 Ga. App. 517, 518, 236 S.E.2d 183, 184 (1977) ("It is clear that this court and the State Board of Workmen's Compensation should, when referring to a new accident, use the word 'aggravation,' and when referring to a condition which is not a new accident, use the terminology, gradual worsening or deterioration, or recurrence, as appropriate to the circumstances."). In the former instance, the initial injury would have reached a medically stable condition, while in the latter the worker would still be suffering the symptoms of the first injury at the time of the second incident.

██ ██    We find this dichotomy—between an aggravation of a stabilized condition and a worsening or a recurrence—useful to aid in the determination of whether the most recent incident contributed independently or materially to the causation of the disabling condition.

An important initial determination will be whether the original work-related injury produced a debilitating condition that continued until the alleged second injurious incident. Where the evidence demonstrates that at the time of the second incident the claimant suffered from an ongoing debilitative condition, establishing that the second incident is an independent cause of the disability will, of necessity, be more difficult. In such a situation, it will have to be shown that the second incident produced results that are not only tied to the disability but have intervened to the extent that they were an independent cause of the disability.

Here, American was faced with the difficult task outlined above. The evidence showed that Goulding missed work intermittently from a time shortly after the first incident, and that his back continued to bother him until the time of the second incident. Expert testimony established that, rather than having reached a medically stable condition, Goulding's back continued to be subject to progressive degeneration.

With respect to the three new compression fractures which appeared on the January 1981 X-rays, the defendant's expert opined that the second incident did not cause these fractures and that, had the X-rays been taken a week before the December 22, 1980 incident, in all probability these X-rays would have revealed the same three fractures. Finally, this expert testified that "[i]t would be extremely improbable for an episode as described [by Goulding, i.e., the December 22, 1980 incident] to *cause* three compression fractures given the history itself." (Emphasis added.) In other words, with respect to the disabling condition, there was no aggravation on

December 22, 1980; there was only a recurrence or worsening of the symptoms tied to the first incident.

█  The evidence supports a finding that the "strain" suffered by Goulding on December 22, 1980, was not an independent cause of the condition that produced the compression fractures of Goulding's vertebrae, and thus of his disability. Consequently, the master had a basis for concluding that the February 23, 1980 incident represented "the most recent injurious incident," RSA 281:38-a, III (Supp. 1983), and that American, the insurance carrier then on the risk, should alone be liable for Goulding's benefits.

*Affirmed.*

All concurred.