Hillsborough
No. 85-505

### TOWN OF HUDSON & a.

v.

### LAWRENCE WYNOTT, JR.

September 18, 1986

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Eileen Fox* on the brief and orally), for the plaintiffs.

*Kozlowski, Gauthier & Parodi*, of Nashua (*Robert M. Parodi* on the brief and orally), for the defendant.

BATCHELDER, J.  The defendant, Lawrence Wynott, Jr. (the claimant), appeals from an order of the Superior Court (*Wyman, J.*, approving a recommendation of a Master, *R. Peter Shapiro*, Esq.) rejecting his claim under the Workers' Compensation Law for medical benefits, RSA 281:21, I. The court found that the claimant had failed to prove that a surgical operation that he underwent on July 20, 1983, was required by and therefore was the direct result of a work-related back injury he had sustained seven years earlier. We reverse.

The claimant was employed by one of the plaintiffs, the Town of Hudson (the employer). When on the job, on June 9, 1976, he injured his back while closing the tailgate of a dump truck. He attempted to return to the job, but the pain in his back and legs rendered him unable to work, and his employment ended.

After undergoing a series of myelograms, the claimant underwent surgery on December 5, 1977. Dr. William P. McCann performed a hemilaminectomy of two lower vertebrae and removed a ruptured disk. The claimant contracted a postoperative wound infection, and, in a second operation on January 8, 1978, Dr. McCann drained and treated the wound. The claimant remained under Dr. McCann's

care through 1980. In June 1980 the claimant began a course of treatment at Dartmouth-Hitchcock Medical Center in Hanover, and he also was referred for vocational rehabilitation. The employer's workers' compensation insurance carrier, the plaintiff Fireman's Fund Insurance Company (the insurer), provided disability compensation and medical benefits during this period.

On February 4, 1981, the New Hampshire Department of Labor approved a $29,000 lump sum agreement between the claimant and the insurer. Under the agreement, the insurer was absolved of liability for further disability compensation, but remained responsible for medical benefits. *See* RSA 281:33 (Supp. 1985). The claimant used the money from the settlement to open a bait shop. Between September 1980 and July 1983, he did not seek medical treatment for his back.

In early July 1983, the claimant lifted a styrofoam bait pail containing about a gallon of water and felt a sharp pain that radiated up and down his spine and into his lower extremities. On July 13 he consulted Dr. Peter J. Grillo, a neurosurgeon associated with Dr. McCann. The claimant was hospitalized and underwent a battery of tests. On July 20 Dr. Grillo performed a laminectomy of two lower vertebrae and foraminotomies of two nerve roots, and excised a herniated lumbar disk.

The claimant filed a workers' compensation claim to recover the medical and hospital expenses resulting from the July 1983 surgery. The insurer denied the claim on the ground that these expenses were not causally related to the June 1976 injury. The deputy labor commissioner held a hearing and ruled in favor of the claimant. The employer and the insurer appealed to the superior court pursuant to RSA 281:37, I.

The master, finding that the July 1983 bait pail incident had a "significant effect upon [the claimant's] underlying back condition," concluded that the incident constituted a "separate intervening event" under the standard enunciated in *Rumford Press v. Travelers Insurance Co.*, 125 N.H. 370, 480 A.2d 162 (1984) and *Town of Goffstown v. Morgrage*, 122 N.H. 591, 448 A.2d 385 (1982). Upon the master's recommendation, the court set aside the decision of the deputy labor commissioner and rendered judgment for the employer and the insurer. The claimant moved for reconsideration and requested a rehearing. The court denied the motion, and this appeal followed.

■ Before turning to the claimant's arguments, we review the applicable legal principles. RSA 281:21, I, governs this case. That statute provides that "[a]n employer . . . or his insurance carrier, shall furnish to an injured employee, or cause to be furnished, rea-

sonable medical, surgical, and hospital services, remedial care, nursing, machines, and mechanical and surgical aids, *for such period as the nature of the injury may require*" (emphasis added). An employer thus has a continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition. *See Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 85, 352 A.2d 741, 743 (1976). It is undisputed that the claimant became an "injured employee" within the meaning of RSA 281:21, I, when he injured his back in June 1976. The sole issue is whether the condition that necessitated the July 1983 surgery resulted from that injury or from some other cause.

The July 1983 bait pail incident complicates matters. When an injured worker sustains a second injury to the same part of the body, it often is difficult to determine the extent to which the later incident affects the worker's underlying condition. We infer from the master's report that there was *some* causal relationship between the June 1976 injury and the condition of the claimant's back at the time of the July 1983 surgery. The master characterized the second injury as an "aggravation" of an "underlying condition," and not as an event unrelated to the first injury. The master did not find that any other injury contributed to the claimant's back condition. Thus, the master's resolution of this case depended upon a choice between two mutually exclusive propositions. Either the need for the July 1983 operation was the direct and natural result of the June 1976 injury, or the bait pail incident constituted an independent cause of the condition that necessitated that operation.

Professor Larson provides the following analysis of this problem:

"[O]nce the work-connected character of any injury . . . has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. This may sound self-evident, but in close cases it is sometimes easy to overlook this essentially simple principle. In a Utah case, claimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were

held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the herniation had occurred while claimant was asleep in bed, is [sic] characterization as a mere sequel to the compensable injury would have seemed obvious. The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances."

1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11(a) (1985) (footnotes omitted).

In order to be regarded as an "independent nonindustrial cause," the second incident need not be a *sufficient* cause of the injured worker's condition. It must be, however, both a *necessary* and a *material* cause of that condition. One helpful concept in this respect is that of stabilization. *See Rumford Press v. Travelers Insurance Co.*, 125 N.H. at 374–75, 480 A.2d at 165. If the worker's underlying condition has stabilized at the time of the second incident, that event is more likely an independent cause of the resulting disability. *See, e.g., Gilbane Building Co. v. Zorabedian*, 113 R.I. 129, 318 A.2d 466 (1974) (at time of second incident, claimant had no disability and had recovered from effects of earlier lower back strain). If the worker still suffers from an ongoing debilitative condition, however, the second incident must ordinarily be a distinct and extraordinary trauma-inducing event in order to qualify as an independent cause. *See Rumford Press v. Travelers Insurance Co., supra* at 375, 480 A.2d at 165 (construing the "most recent injurious incident" rule, RSA 281:38-a, III (Supp. 1985)); *see also Town of Goffstown v. Morgrage*, 122 N.H. 591, 448 A.2d 385 (1982) (subsequent injury, occurring while claimant was putting on his pants, not an independent cause of disabling back condition).

The claimant points out that *Rumford Press* and *Morgrage* involve the "successive carrier" problem, *see* 4 A. LARSON, *supra* § 95.11 (1986), an issue not presented here, as well as a different governing statute, RSA 281:38-a, III (Supp. 1985). We think, however, that although the second injury in this case would not have been independently compensable, the principles employed in the analysis of

the causation issues in *Rumford Press* and *Morgrage* are equally applicable here. See 4 A. LARSON, *supra* § 95.23. The presence or absence of a second insurance carrier at the time of a subsequent injury does not affect the extent of the original carrier's liability. *But cf. In re Compensation of Peterson*, 645 P.2d 567, 568 n.1 (Or. Ct. App. 1982), *aff'd on other grounds*, 294 Or. 537, 660 P.2d 1058 (1983).

With these principles in mind, we turn to the contentions before us. The claimant argues that the evidence did not support the master's finding that the bait pail incident was a "separate intervening event" and an independent cause of the condition that necessitated the July 1983 surgery.

■■ Our standard of review is settled. Whether the need for the July 1983 surgery was a direct result of the June 1976 injury is a question of fact. We will not disturb the trial court's determination unless there is no competent evidence in the record on which the decision reasonably could have been made. *F. A. Gray, Inc. v. Demopoulos*, 122 N.H. 495, 496, 446 A.2d 860, 861 (1982). The claimant bore the burden of proof on the issue of causation. *Id.*

The claimant was the only witness at trial. The sole medical evidence was the deposition of Dr. Grillo. Dr. Grillo stated that the claimant had a history of "persistent" pain in his back and lower extremities after 1976, and that the initial injury, the first operation, the ensuing infection and scar tissue, and the structure of his spine accounted for the continuing symptoms. Dr. Grillo also testified that the bait pail incident was not a cause of the condition that required the July 1983 surgery, and characterized that incident as a "little thing[ ] that happened to [the claimant] along the way."

On cross-examination, Dr. Grillo was pressed regarding the bait pail incident. He reiterated:

> "The patient had had pain over a period of years as specifically stated in the history. And it radiated into both lower extremities and was similar to the pain which he got when he lifted a pail of water.
>
> And because of this, I don't think that lifting the pail of water one week prior to the time that he saw me was the cause of his difficulties. Rather, it was an incident along the way which occurred which [the claimant] focused on and related in the history. It is not the beginning of an illness.
>
> . . . .
>
> ". . . [H]e had been complaining of pain for several years, going all the way back to 1976. And his complaints,

as far as I can see, did not alter very much with time. . . .
There was a constant complaint of back pain. . . .

. . . .

". . . I would rarely hospitalize someone for a one-week
history of pain. . . .

"One of the reasons that I hospitalized [the claimant] is
that his history went far back and that his symptoms were
always the same and that I didn't think it was likely that
he would get better with an extra period of rest at home.
That's why I hospitalized him. It seemed to be a continu-
ous and ongoing problem."

Dr. Grillo described the reason for the July 1983 surgery as fol-
lows: "It was because of [a] summation of things over a period of
time, of symptoms which really didn't change that much. And I
thought to make an attempt to change the course of his illness and
the course of his pain."

There thus was no evidence that the bait pail incident was an
independent cause of the claimant's condition at the time of the July
1983 surgery.

The employer and the insurer make much of the period between
September 1980 and July 1983 when the claimant did not seek medi-
cal treatment for the pain in his back. This hiatus, they argue, justi-
fied a finding that the claimant's disability stabilized at some point
before July 1983. The master made no such finding, however. He
expressly stated that "the defendant experienced some pain in his
back" during the period between September 1980 and July 1983.
The evidence amply supported this finding. With respect to the
nearly three-year hiatus in medical treatment, the claimant testi-
fied: "[W]hen I would see [the doctors] they would tell me that there
was nothing more that they could do for my back. When my back
hurt me, I was to go lay down. In other words, that was all they
could possibly do for my back."

The plaintiffs contend that Dr. Grillo's testimony, although uncon-
tradicted, was of dubious value because it was based in large part on
the claimant's complaints of pain and discomfort, *see Gowen v.
Brothers*, 121 N.H. 377, 380, 430 A.2d 159, 160–61 (1981). They also
argue that the master was fully at liberty to reject the testimony
and rule against the claimant on an issue on which he bore the
burden of persuasion. *See Condiles v. Waumbec Mills, Inc.*, 95 N.H.
127, 129, 58 A.2d 726, 728 (1948).

██  Although there are situations in which a fact-finder may
ignore uncontradicted medical testimony and rely on lay testimony

and his own inferences, *see Dustin v. Lewis,* 99 N.H. 404, 406, 112 A.2d, 54, 56 (1955), this is not such a case. The causation of a back injury of this nature is a matter properly within the province of medical experts. *See Mengel v. Hawaiian-Tropic Northwest & Central Distributors, Inc.,* 618 S.W.2d 184, 187 (Ky. Ct. App. 1981); 3 A. LARSON, *supra* § 79.54(e) (1983); *cf. Bothwick v. State,* 119 N.H. 583, 587–88, 406 A.2d 462, 465 (1979) (hypertension); *City of Rochester v. Smith,* 119 N.H. 495, 497, 403 A.2d 421, 422 (1979) (heart and lung disease). In these circumstances, the master was required to identify the "valid competing evidence" or the "considerations that impelled [him] to disregard the medical evidence" before rejecting Dr. Grillo's testimony. 3 A. LARSON, *supra* § 79.52(d). This the master failed to do.

Moreover, although much of Dr. Grillo's testimony was based on the claimant's descriptions of his pain, he also drew upon his considerable first-hand knowledge of the claimant's back condition. He had overseen an extensive variety of tests in the week before the July 1983 operation, and during the operation itself had had an opportunity to observe directly the condition of the claimant's spinal column. As an associate of Dr. McCann, he had a thorough grasp of the claimant's post-1976 medical history. In stating that the June 1976 injury was the cause of the claimant's disability, Dr. Grillo offered an informed medical conclusion; he did not serve merely as a conduit for the claimant's complaints.

The plaintiffs further contend that Dr. Grillo's testimony was at least partially consistent with the master's finding. They point out that Dr. Grillo on cross-examination characterized the bait pail incident as an "aggravation" of the underlying condition. Had we any reason to believe that Dr. Grillo intended to use this term with reference to our discussion in *Rumford Press,* 125 N.H. at 375, 480 A.2d at 165 (distinguishing between "an aggravation of stabilized condition" and "a worsening or a recurrence"), we might look favorably upon this argument. Here, however, there is no reason for such a belief. The remainder of Dr. Grillo's remarks were unequivocal. We will not regard his acquiescence in the plaintiffs' lawyer's use of ambiguous terminology as a deliberate retraction of his prior testimony.

The uncontradicted medical evidence thus compelled a finding in favor of the claimant. We hold that there was no competent medical evidence on which the master reasonably could have found that the bait pail incident was an independent cause of the claimant's condition. *Accord Dutton v. Industrial Commission of Arizona,* 140 Ariz. 448, 682 P.2d 453 (1984); *Rich v. Vail Ballou Press, Inc.,* 33

A.D.2d 1088, 307 N.Y.S.2d 943 (1970); *Christensen v. State Accident Insurance Fund*, 27 Or. App. 595, 557 P.2d 48 (1976). It necessarily follows from the above analysis that the condition that required the July 1983 operation was a direct and natural result of the June 1976 injury, and that the claimant was entitled to judgment in his favor.

In conclusion, we emphasize that this opinion should not be construed as requiring a finding in favor of any claimant who offers uncontradicted medical testimony bearing on a question of causation. In this case, however, the complexity of the medical issues involved, the unequivocal nature of the testimony, and the absence of any articulated reason to discount it, compel a reversal. We accordingly reverse the order of the court and reinstate the decision of the deputy labor commissioner.

*Reversed; decision of the deputy labor commissioner reinstated.*

All concurred.