Compensation Appeals Board
No. 94-223

## APPEAL OF COMMERCIAL UNION INSURANCE COMPANY

### (New Hampshire Department of Labor Compensation Appeals Board)

November 9, 1995

*Moquin & Daley, P.A.*, of Manchester (*Terrence J. Daley* on the brief and orally), for the claimant, Paul Labreche.

*Devine & Nyquist*, of Manchester (*Corey Belobrow* on the brief and orally), for Commercial Union Insurance Company.

*Wiggin & Nourie, P.A.*, of Manchester (*Eric P. Bernard* and *Richard P. Creedon* on the brief, and *Mr. Creedon* orally), for CIGNA Insurance Company.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Paul L. Salafia* on the brief and orally), for Associated Grocers of New England, Inc. and Liberty Mutual Insurance Company.

BROCK, C.J. Commercial Union Insurance Company (Commercial Union) appeals the decision of the New Hampshire Department of Labor Compensation Appeals Board (board) finding Commercial Union solely liable for workers' compensation benefits payable to the claimant, Paul Labreche. We affirm.

The claimant was employed by Associated Grocers of New England, Inc. (Associated Grocers) as a forklift operator. On May 8, 1989, he suffered a work-related injury and was diagnosed with a herniated disc at the L4 level. No surgery was performed, and the claimant returned to work in July with no restrictions and "feeling fine." CIGNA Insurance Company was the responsible carrier at the time.

On March 1, 1992, the claimant struck his right rib on a pallet while at work. On March 11, he returned to Dr. John Sherwin, who had treated his previous back problem, because of symptoms similar to those he had suffered in 1989. An MRI was performed, and Dr. Sherwin noted that it was positive for a left paracentral disc herniation. The claimant returned to work without restrictions in late April. Liberty Mutual Insurance Company was the responsible carrier at the time of the 1992 injury.

From April 1992 through March 10, 1993, the claimant performed his regular work as a forklift operator. On March 11, 1993, while stocking a lower bay, he twisted to the left while bent at the waist lifting approximately forty-four pounds. He felt a sudden sharp pain in his lower back and pain down his leg more severe than he had previously experienced. He returned to Dr. Sherwin, who on April 1, 1993, performed surgery. Dr. Sherwin found herniated discs at the

L4-5 level and at the L5-S1 level. In a letter dated March 29, 1993, Dr. Sherwin opined that the claimant's upcoming surgery on the "known disc at L4-5" was directly related to his 1992 injury. Commercial Union was the insurance carrier for Associated Grocers at the time of the 1993 injury.

In May and October 1993, Dr. Kenneth Polivy reviewed the claimant's medical records at the request of Liberty Mutual. In Dr. Polivy's opinion, the claimant's 1993 bending injury was a "new distinct injury . . . separate and distinct from any problem that the claimant had before." He based this opinion in part on the claimant having experienced "an interval free period during which time he needed no treatment." He also noted that the myelogram and CT scan performed on the claimant prior to surgery showed "only a certain disc herniation at the L4-5 level," whereas surgery ultimately was necessary on both the L4-5 and L5-S1 discs. Although the claimant had "preexisting degeneration secondary to the known disc protrusion at L4-5 causally related to the May 1989 injury," Dr. Polivy concluded after his review of all the available records that "clearly the injury in March 1993 is a separate incident brought on by the lifting injury at work."

The board held an evidentiary hearing on November 3, 1993, at which the claimant, Commercial Union, Liberty Mutual, and CIGNA appeared. The board found that the claimant's 1993 injury was an aggravation of his preexisting condition and ruled that Commercial Union, the insurance carrier at the time, was responsible to provide benefits. Commercial Union appeals that decision.

Commercial Union principally argues that the board erred in finding that the claimant's 1993 injury was an aggravation of a preexisting condition, rather than the result of an ongoing debilitative condition.

Where successive insurance companies are involved in a workers' compensation case involving successive injuries, the governing law is set forth in RSA 281-A:46, III (Supp. 1994), which provides in pertinent part:

> [I]f compensation is payable for an injury, other than an occupational disease, which aggravates a preexisting physical condition, the employer in whose employment the employee sustained the most recent injurious incident and any insurance carrier on the risk when such injurious incident occurred, shall alone be liable for any benefit allowable under this chapter without a right to contribution from any prior employer or insurance carrier.

For a subsequent carrier to be liable for a subsequent injury, that injury must have been an independent cause of the claimant's disability. *See Town of Hudson v. Wynott*, 128 N.H. 478, 482, 522 A.2d 974, 976 (1986); *Rumford Press v. Travelers Ins. Co.*, 125 N.H. 370, 372, 480 A.2d 162, 165 (1984).

> If the worker's underlying condition has stabilized at the time of the second incident, that event is more likely an independent cause of the resulting disability. If the worker still suffers from an ongoing debilitative condition, however, the second incident must ordinarily be a distinct and extraordinary trauma-inducing event in order to qualify as an independent cause.

*Wynott*, 128 N.H. at 482, 522 A.2d at 976 (citation omitted).

A relevant causation inquiry is therefore whether the claimant's condition had stabilized prior to the most recent incident. If a preexisting condition had stabilized, then the subsequent incident is more likely an independent cause of the resulting disability, in which case it is said to have been an aggravation of the preexisting condition constituting an independent cause of the disability. *See Rumford Press*, 125 N.H. at 374-75, 480 A.2d at 165. On the other hand, the disability may relate back to the original condition if the subsequent injury was a recurrence or worsening of an existing condition. *Id.* "An important initial determination will be whether the original work-related injury produced a debilitating condition that continued until the alleged second injurious incident." *Id.*

■ The practical consequences of the aggravation/worsening dichotomy in the successive insurance carrier situation have been summarized as follows:

> For a worsening or recurrence of the original injury, the first [carrier] remains liable. However, if an incident occurs that can be considered a new accident and a separate cause of the employee's condition independent of the prior injury, or if an incident exacerbates or aggravates a preexisting but stabilized condition, . . . the insurance carrier on the risk when the incident occurred is alone responsible for benefits to the employee . . . .

R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 7.06, at 7-6 (1994) (parentheses omitted).

■ The determination of which incident caused the claimant's surgery and disability in 1993 is a question of fact and will not be disturbed unless no competent evidence exists in the record on

which the board's decision could reasonably have been made. *Wynott*, 128 N.H. at 483, 522 A.2d at 977. The question of medical causation of a back injury properly belongs within the province of medical experts, *Appeal of Cote*, 139 N.H. 575, 579-80, 660 A.2d 1090, 1094 (1995), and as long as competent evidence supports the board's decision, we will not reverse a finding supported by expert evidence in the record even if other evidence would lead to a contrary result, *see Petition of Blake*, 137 N.H. 43, 49, 623 A.2d 741, 745 (1993). We note that in its written decision the board expressly stated its findings of fact, and Commercial Union's claim to the contrary is incorrect.

The board set forth the basis for its determination that the 1993 injury was an aggravation of the claimant's preexisting condition. The 1989 injury, the board found, resulted in lower back and leg pain and was treated conservatively by Dr. Sherwin, who prescribed pain medication and rest. Eight weeks later the claimant returned to his job as a forklift operator without restrictions. He worked fulltime until March 1, 1992, when he sustained a work-related chest injury, leading to a diagnosis of a chest wall contusion. He again saw Dr. Sherwin, who prescribed medication and kept him out of work until April 22. When the claimant returned to work, he experienced intermittent back discomfort but continued working as a forklift operator. He cancelled a follow-up appointment with Dr. Sherwin because "he was feeling good."

On March 11, 1993, the board found, the claimant felt a sharp pain in his back and leg while lifting and twisting with cases of food. He immediately sought medical attention and underwent a battery of tests. Shortly thereafter, on April 1, Dr. Sherwin performed a laminectomy. In mid-October, the claimant returned to work with a thirty-five pound weight restriction.

The facts thus support the board's finding that the 1993 incident was a separate intervening incident resulting in an aggravation of the claimant's preexisting back condition. Implicit in the finding of aggravation is a finding that the condition had stabilized, *see Rumford Press*, 125 N.H. at 375, 480 A.2d at 165, and evidence that the claimant had been back at work at full duty, without seeking medical treatment, and was "feeling good" supports the conclusion that the claimant was in a stabilized, rather than a debilitating, condition.

Additionally, the medical evidence provided by Dr. Polivy supported the board's determination of aggravation. On May 4, 1993, Dr. Polivy stated that in his opinion, based on a review of the claimant's statements, Dr. Sherwin's notes, hospital records and

MRI reports, "the bending injury which occurred on March 11, 1993 was separate and distinct from any problem that the claimant had before." Again, on May 12, 1993, after reviewing additional documents including an "operative note and recent results of myelogram and CT scan performed in 1993," Dr. Polivy reiterated his opinion that the claimant "suffered a new separate injury on March 11, 1993." Finally, on October 27, 1993, Dr. Polivy restated his initial conclusion that the 1993 incident was a distinct injury. In a lengthy letter reciting the claimant's relevant medical history, Dr. Polivy noted that the back and leg pains re-experienced by the claimant after the second incident in 1992 "obviously resolved to a significant degree because the claimant never returned for his last appointment and no further follow-up appointments were scheduled by Dr. Sherwin." The next incident in 1993, according to Dr. Polivy, "is clearly a new and separate incident which involved lifting, twisting, and bending at the same time. This is the type of mechanism that could clearly cause a disc protrusion to occur."

Although Dr. Sherwin, solicited by Liberty Mutual for an opinion, stated that the 1992 injury resulted in the need for the 1993 surgery, the board was free to reject that evidence in favor of the conflicting opinion of Dr. Polivy. *See Appeal of Gamas*, 138 N.H. 487, 490-91, 642 A.2d 925, 927 (1994). Commercial Union's assertion that undisputed medical evidence negated the causative effect of the 1993 injury is incorrect. Ample evidence, as recounted above, supports the conclusion that the claimant's 1993 incident was a separate, independent cause of his disability constituting an aggravation of his preexisting condition.

Commercial Union argues that the claimant suffered from an ongoing debilitative condition in 1993, such that the 1993 incident had to have been an extraordinary trauma in order to have been the causative injury. *See Wynott*, 128 N.H. at 482, 522 A.2d at 976. As set forth above, however, the board properly found as a matter of fact that the last incident was an aggravation, which is premised upon a stabilized condition, not an ongoing debilitative one. *See Rumford Press*, 125 N.H. at 375, 480 A.2d at 165.

We have considered the other arguments raised by Commercial Union and conclude that they are without merit and do not warrant discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.