Compensation Appeals Board
No. 2007-197

## APPEAL OF ANHEUSER-BUSCH CO., INC.
### (New Hampshire Compensation Appeals Board)

Argued: November 13, 2007
Opinion Issued: January 15, 2008

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Laurence W. Getman* and *Tracy L. McGraw* on the brief, and *Mr. Getman* orally), for the petitioners.

*Gawryl & MacAllister*, of Nashua (*Jared O'Connor* on the brief and orally), for the respondent.

HICKS, J. The petitioners, Anheuser-Busch Company, Inc. (Anheuser) and ACE USA as its insurer, appeal a decision of the New Hampshire Compensation Appeals Board (board) requiring them to pay disability benefits to the respondent, Douglas Bennett, following his knee replacement surgery in January 2006. We affirm in part and reverse in part.

We recite the facts as found by the board or as presented in the record. The respondent has worked for Anheuser full time since August 1978 in its brewing department. His position requires significant physical labor, including heavy lifting and cleaning inside empty brew tanks.

Since as early as 1988, the respondent has suffered from problems with his knees and has been treated for such by Dr. William Mitchell. The respondent suffered a compensable, work-related injury to his left knee in November 1990, and underwent ligament reconstruction. In 1991, the respondent was diagnosed with "degenerative osteoarthritis" and told that both knees would need to be replaced.

The respondent opted against knee replacement and continued to work, although suffering from knee pain. In 1996, he suffered a "hyperextension

injury" to his left knee while climbing a ladder at work. An X-ray taken at that time showed that he had "advancing degenerative arthritis." In 1998, he suffered a compensable work-related injury to his right knee, when it gave out and he sprained his ankle while coming down a ladder. For this injury, Dr. Mitchell performed ligament reconstruction surgery. At visits following the surgery, Dr. Mitchell noted the following: "mobility and function is satisfactory," "[r]ange of motion is satisfactory," and "recurrent episodes of giving way with associated instability and joint pain."

In October 1998, Dr. Mitchell noted that the respondent had "degenerative changes of his joint," that "attempts to stabilize his complex instability" had failed, and that he "is a candidate for total joint arthroplasty." In 1999, Dr. Mitchell found the respondent's knee conditions to be at a "medical end" and that his physical restrictions at work were permanent. The respondent was given a 32% permanent impairment rating in 2000 and a permanent impairment award was paid by the petitioners.

The respondent continued to see Dr. Mitchell regularly over the next five years for reevaluation at the behest of Anheuser's Occupational Health Department. From 2000 through 2003, Dr. Mitchell found the respondent's physical and clinical findings "unchanged," although he suffered from "persistent degenerative osteoarthritic pain."

At a regularly scheduled visit on September 26, 2005, Dr. Mitchell found that the respondent had "progressive and advancing degenerative osteoarthritis associated with persistent and increased giving way" and again recommended "[t]otal joint replacement." In November 2005, Dr. Mitchell noted: "[The respondent is] [t]roubled with repetitive stress to the traumatized joint surfaces. Cumulative stress advancing arthritis. Causally related to his work responsibilities, complicating advancing knee symptoms secondary to post traumatic osteoarthritis."

The respondent had "bilateral total knee replacement[ ]" surgery on January 25, 2006. The petitioners paid for this surgery, but denied the respondent's claim for disability benefits. At a hearing before the department of labor on June 14, 2006, the respondent testified that increasing pain, in conjunction with an unexpected giving-way episode of both knees while at home, ultimately prompted his decision to go forward with the surgery. The respondent agreed that he did not suffer from a specific traumatic event at work that precipitated his surgery and that he had been told he needed knee replacement surgery since "the early '90s."

The hearing officer found that the respondent was entitled to disability benefits starting from January 25, 2006. The petitioners appealed to the board, which ruled that the respondent was entitled to disability benefits as he suffered from a cumulative trauma injury, with a new date of injury

of September 26, 2005. The board also ruled that RSA 281-A:48, I (1999) allows for reopening of workers' compensation cases for a change in condition after four years of no compensation benefits.

> We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable. The board's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the board's decision reasonably could have been made.

*Appeal of Lorette*, 154 N.H. 271, 272 (2006) (quotation omitted).

The nature of the respondent's knee conditions in January 2006 is the threshold issue in this case. If his knee injuries in 1990 and 1998 remained unstable and debilitative, ultimately resulting in the knee replacement surgery, then the date of his injury would "relate back" to his previous injuries. *Appeal of CNA Ins. Co.*, 148 N.H. 317, 320 (2002). In such case, the petitioners assert that RSA 281-A:48, I, bars the payment of disability benefits. RSA 281-A:48, I, provides, in pertinent part:

> Any party at interest with regard to an injury occurring after July 1, 1965, may petition the commissioner to review a denial or an award of compensation made pursuant to RSA 281-A:40 by filing a petition with the commissioner not later than the fourth anniversary of the date of such denial or the last payment of compensation under such award or pursuant to RSA 281-A:40
> . . . .

We have interpreted this language as a statute of limitations barring the reinstatement of disability benefits for the recurrence of an old injury where the last disability payment was made more than four years earlier. *See Coulombe v. Noyes Tire Co.*, 125 N.H. 765, 766-67 (1984) (decided under prior law). This interpretation of RSA 281-A:48, I, has not been challenged by either party in this case. Accordingly, we accept that the statute will bar recovery of disability benefits in this case if the respondent's 2006 surgery relates back to his previous injuries.

If, however, the surgery was necessitated by a cumulative trauma injury, then a new date of injury applies pursuant to RSA 281-A:16 (Supp. 2006). The statute provides, in pertinent part: "For an injury caused by cumulative trauma, the date of injury shall be the date of first medical treatment. For an injury or condition aggravated by cumulative trauma, the date of injury shall be the date of first medical treatment for the aggravation." RSA 281-A:16.

The issue before the board, therefore, was whether the respondent's disability in January 2006 was due to a steady progression and worsening of his previous injuries or an aggravation caused by cumulative trauma. The board found that the respondent suffered from cumulative trauma. Based upon our review of the evidence, this finding is neither unjust nor unreasonable.

"An employee who recovers from previous injuries resulting in workers' compensation benefits can recover for a new disability arising from a new acute injury or cumulative trauma." *Appeal of Bellisle*, 144 N.H. 201, 203 (1999). "When an injured worker sustains a second injury to the same part of the body, [however,] it often is difficult to determine the extent to which the later incident affects the worker's underlying condition." *Town of Hudson v. Wynott*, 128 N.H. 478, 481 (1986). This determination becomes more difficult when the second injury is claimed to be the result of cumulative trauma.

"A disability which is causally related to cumulative work-related stress may constitute a compensable injury under New Hampshire's workers' compensation law. This may be so even if the claimant had a pre-existing degenerative condition and did not suffer a discrete traumatic injury." *Appeal of Gelinas*, 142 N.H. 295, 297 (1997) (citation omitted). A cumulative trauma injury often "may develop gradually, and with the presence of some pain," resulting in "an acute manifestation occurring on a particular day which is so intolerable that it prevents the claimant from working." *Appeal of Briggs*, 138 N.H. 623, 627 (1994).

"The medical causation of a knee injury . . . is a matter properly within the province of medical experts, and the board [is] required to base its findings on this issue upon the medical evidence . . . ." *Id.* at 629. We turn, therefore, to the record to determine whether the medical evidence supports the board's finding of a new disability from cumulative trauma.

The medical record includes numerous notations by the respondent's treating physician, Dr. Mitchell. In a letter dated November 4, 1991, following an injury to the respondent's left knee in November 1990, Dr. Mitchell noted that the respondent "has a degenerative knee disorder. Clearly, this problem has stabilized . . . . It is not likely that further acceleration of the degenerative process will occur, since the degenerative problem has reached an end stage." In 1996, however, Dr. Mitchell noted that the respondent's left knee showed "*advancing* degenerative arthritis." (Emphasis added). Dr. Mitchell again noted in September 2005 that the respondent had "advancing degenerative osteoarthritis."

The respondent had been on restrictions at work since at least 1996 and by 1999, Dr. Mitchell noted that these restrictions were permanent. The

respondent testified, however, that he continued to work beyond his limitations until the pain became intolerable in 2005.

In a letter dated May 31, 2006, Dr. Mitchell wrote the following regarding the respondent's condition:

> Post traumatic degenerative osteoarthritis advanced to the point where work was no longer tolerable. His advanced state of arthritic change required total joint arthroplasty where he underwent bilateral total knee replacements on 1/25/06. Progressive pain disorder from his injuries resulted in the inevitable progression of his disease. It is with a high degree of medical certainty this was related to the repetitive and cumulative stress associated with his employment, having injured his knees in 1990 and 1998. The stresses associated with his occupation have been continuing and ongoing. Pain and stress have never been separate from the original trauma, but rather the distinct new presentation of symptoms required the intervention with total joint arthroplasty this past January. This traumatic pain disorder is causally related to his employment.

The board relied upon this letter in its decision, finding Dr. Mitchell's opinion to be "persuasive." Dr. Mitchell's opinion states that the respondent's osteoarthritis "advanced to the point where work was no longer tolerable," that the "repetitive and cumulative stress associated with his employment" resulted in the "inevitable progression of his disease" and a diagnosis of "[p]rogressive pain disorder." Dr. Mitchell also noted the following in November 2005: "[The respondent is] [t]roubled with repetitive stress to the traumatized joint surfaces. Cumulative stress advancing arthritis. Causally related to his work responsibilities . . . ."

█ The record supports the conclusion that the respondent's knee conditions, which ultimately resulted in knee replacement surgery, were the result of continuing work-related stress and aggravation on his knees rather than a natural progression or worsening of his original injuries. The board found that "[t]he treating physician's medical reports . . . show[ed] that there was further damage being done to Claimant's knees by the ongoing work." Although Dr. Mitchell noted in 1991 that the respondent's degenerative knee disorder had reached an "end stage," in subsequent notations, he found that it was in fact "advancing" due to the "repetitive and cumulative stress associated with his employment." A finding of cumulative trauma is appropriate where physical exertions at work "aggravated, exacerbated, or accelerated" a previous condition. *Bellisle*, 144 N.H. at 204; *see also Briggs*, 138 N.H. at 631. We cannot say,

therefore, that the board's order is unjust or unreasonable based upon the record before us.

The petitioners rely upon a medical report submitted by Dr. Siliski on June 8, 2006, in which he states: "there is nothing in the medical records to indicate any new significant injury that had any bearing on the [respondent's] ultimate treatment in the form of bilateral total knee replacements." Although the board's decision does not reference this report, the board is "free to reject . . . evidence in favor" of a conflicting medical opinion. *Appeal of Commercial Union Ins. Co.*, 140 N.H. 429, 434 (1995). Moreover, Dr. Siliski is not the respondent's treating physician, and the report indicates that Dr. Siliski only saw the respondent once in November 1998. "[A]s long as competent evidence supports the board's decision, we will not reverse a finding supported by expert evidence in the record even if other evidence would lead to a contrary result." *Id.* at 433. Accordingly, we cannot say that the board erred in relying primarily upon the opinion of the respondent's treating physician of over eighteen years over that of Dr. Siliski.

The petitioners further argue that *Hudson* and *Rumford Press v. Travelers Ins. Co.*, 125 N.H. 370 (1984), require a finding that the respondent's condition relates back to his previous injuries. We disagree. The nature of an injury or condition is a question of fact, which must be determined on a case by case basis. *See Hudson*, 128 N.H. at 483. The facts of the present case differ in an important respect from those in *Hudson* and *Rumford*. The undisputed facts show that the respondent continued his physically demanding employment with Anheuser, working beyond his medically-set restrictions, and Dr. Mitchell's uncontroverted medical opinion found that the respondent's osteoarthritic condition was "advancing" due to his continued employment.

In *Hudson*, the claimant suffered a back injury at work, which prevented him from returning to work and he ultimately ended his employment. *Id.* at 479-80. He opened a bait shop and went into employment for himself until he suffered an injury when lifting a pail. *Id.* at 480. We held that the claimant's previous employer was liable for medical benefits because his second injury related back to his original work injury. *Id.* at 485-86. We further held that "there was no competent medical evidence on which the master reasonably could have found that the bait pail incident was an independent cause of the claimant's condition." *Id.* at 485. There was also no evidence that the claimant's work following his original injury placed repetitive and cumulative stress on his back condition, thereby aggravating or exacerbating it.

The *Rumford* case, similarly, did not contain a factual finding that the claimant worked beyond his medically-set limitations thereby advancing

his back condition. *Rumford*, 125 N.H. at 373 ("[The claimant] testified that . . . he was careful at work."). The claimant in *Rumford* suffered his subsequent injuries within one year of his original injury. *Id.* at 372-73. We held that expert testimony had established that the claimant's back condition "continued to be subject to progressive degeneration" during this time. *Id.* at 375. The degeneration, however, was *not* linked to repetitive or cumulative stress at work leading up to his subsequent injuries. *Id.* at 375-76. The absence of this fact distinguishes *Rumford* from the present case, where the respondent's physician found that years of continued physical exertion at work advanced his knee conditions to the point where the pain was intolerable, necessitating knee replacement surgery.

■ Having agreed with the board that the respondent suffered from a cumulative trauma, we must next determine whether the board properly found "the date of injury." RSA 281-A:16. The board set the date of injury as September 26, 2005. The petitioners dispute this date, arguing that the date of first medical treatment was no later than April 5, 1998, when the claimant sustained a compensable work-related injury and began treatment. For an injury or condition aggravated by cumulative trauma, RSA 281-A:16 sets the date of injury as "the date of first medical treatment for the aggravation." The respondent's first "medical treatment" for the aggravation of his condition occurred on January 25, 2006, when he had knee replacement surgery. Accordingly, we reverse the board's decision that September 26, 2005, was the date of injury.

Given the new date of injury, RSA 281-A:48, I, does not bar the respondent's claim for disability benefits; the respondent is considered to have suffered a new injury. Accordingly, we need not consider whether the board erred in finding that a "change in conditions" occurred as that term is used in RSA 281-A:48, I. For the sake of clarity, however, we note that a petition seeking review of a denial or award of compensation that is filed pursuant to RSA 281-A:48 must be filed "*not later than* the fourth anniversary of the date of such denial or the last payment of compensation under such award." RSA 281-A:48, I (emphasis added).

*Affirmed in part and reversed in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.