**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0223, <u>Appeal of OL International Holdings, LLC</u>, the court on November 29, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The petitioners, Utica National Insurance Company and OL International Holdings, LLC, appeal a decision of the New Hampshire Compensation Appeals Board (CAB) determining that Peter Dodier's death by suicide was a result of work-related anxiety and depression, and that the respondent, the Estate of Peter Dodier (Estate), is entitled to workers' compensation benefits.  We affirm.

I

This is the second appeal of this case.  Many of the underlying facts and the relevant procedural history are set forth in our prior decision and need not be repeated here.  <u>See</u> <u>Appeal of Estate of Dodier</u>, 174 N.H. 548 (2021).  In that opinion, we concluded as a matter of law that the Estate had "demonstrated legal and medical causation as to [the decedent's] anxiety and depression," and reversed the CAB's decision to the contrary.  <u>Id</u>. at 550, 556.  We remanded for the CAB to apply the test set forth in <u>Appeal of Pelmac Industries, Inc.</u> "to determine whether [the decedent's] death by suicide was a direct and natural result of his initial compensable injury of anxiety and depression, such that the suicide is compensable under RSA 281-A:26."  <u>Id</u>. at 562; <u>see</u> <u>Appeal of Pelmac Indus.</u>, 174 N.H. 528 (2021); RSA 281-A:26 (2023).

On remand, the CAB determined that the Estate satisfied its burden under <u>Pelmac</u> by "prov[ing], by a preponderance of the evidence, that [the decedent's death] resulted from a disturbance of mind of such severity as to override normal, rational [judgment] and that this disturbance of his mind resulted directly from his work-related anxiety and depression."  Accordingly, the CAB ruled that the decedent's Estate is entitled to workers' compensation benefits "from the date of death and continuing."

The petitioners moved for rehearing, to which the Estate objected.  The CAB denied the petitioners' motion.  This appeal followed.

## II

On appeal, the petitioners argue that the CAB erred: (1) "when it failed to articulate and provide the basis for why it ignored the opinions of three treating medical providers"; (2) "by not excluding the claimant's suicide under the definition of injury in RSA 281-A:2, XI when the causal chain of his depression was broken based on the opinion of numerous treating providers"; and (3) "when it did not consider non-medical facts" in considering the causal chain legal test.

Our standard of review of CAB decisions is established by statute. See Appeal of The Lawson Group, 175 N.H. 397, 399 (2022); RSA 541:13 (2021). RSA 541:13 provides:

> Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the [CAB] to show that the same is clearly unreasonable or unlawful, and all findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

In Pelmac, we held that "[a]n employee's death by suicide is compensable under RSA 281-A:26 if the claimant proves by a preponderance of the evidence that the suicide resulted from a disturbance of mind of such severity as to override normal, rational judgment, and that such disturbance of mind resulted from the employee's work-related injury and its consequences." Pelmac, 174 N.H. at 542-43. This chain-of-causation test essentially places the burden on the claimant to prove by a preponderance of the evidence that there was an unbroken chain of causation between the work-related injury, the disturbance of mind, and the ultimate suicide. Id. at 542. We concluded that an employee's death by suicide is deemed to be the direct and natural result of the prior work-related injury when this chain-of-causation test is satisfied. Id. at 543; see RSA 281-A:2, XI (2023).

We first address the petitioners' overarching argument that the record did not support the CAB's finding that the decedent's "suicide is causally-related to [his] work injury." The petitioners emphasize the treating providers' observations that the decedent's suicidal ideation was considered "resolved" at various points during treatment, and assert that this demonstrates a broken chain of causation. In addition, the petitioners point to certain non-medical evidence which, they argue, indicates he was not suffering from a severe disturbance of mind.

2

In reviewing the CAB's findings, our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record. Appeal of Dean Foods, 158 N.H. 467, 474 (2009). As long as competent evidence supports the CAB's decision, we will not reverse a finding supported by expert evidence in the record even if other evidence would lead to a contrary result. Appeal of Anheuser-Busch Co., 156 N.H. 677, 682 (2008).

The CAB specifically relied upon the medical opinion of the Estate's expert, Albert Drukteinis, which the CAB found "more convincing" than that of the petitioners' medical expert. Drukteinis opined that the decedent's work-related injury "distorted" the decedent's reality, "diminished [the decedent's] capacity to make a willful decision about whether or not he should take his own life," and left him unable to "assess his situation realistically or consider options besides suicide." In forming that opinion, Drukteinis reviewed records from numerous medical personnel, including the decedent's treating providers; interviewed the decedent's wife for two hours; and examined notes and journals, emails, text messages, personal financial information, and employee personnel records. Based on Drukteinis' expert opinion, the CAB concluded that the Estate had met its burden of proof under the Pelmac test. We have reviewed the record and determine that the CAB's decision was supported by competent evidence in the record.

The petitioners further assert that "the CAB's decision does not provide an adequate basis for its conclusions to allow this Court to conduct an intelligent review" because it failed to articulate why it disregarded the treating providers' observations as well as certain non-medical evidence. See Appeal of Walker, 144 N.H. 181, 184 (1999) (reasoning that "[w]hile the board may reconcile conflicting evidence, or disbelieve unrefuted evidence, we are unable to intelligently review its decision when it does not provide an adequate basis for its conclusions" (citations omitted)). However, as set forth above, the CAB expressly identified the basis for its decision, which was rooted in the opinion of the Estate's medical expert.

To the extent the petitioners argue that the CAB erred in failing to accord the treating providers' observations "substantial weight," see Appeal of Morin, 140 N.H. 515, 519 (1995), we are unpersuaded. As the Estate points out, the decedent's "injury" is not his death by suicide, but rather his work-related depression and anxiety. See RSA 281-A:26. Therefore, under these circumstances, instances of "resolved" suicidal ideation as indicated by the decedent's treating providers do not compel a finding that the chain of causation between his work-related depression and anxiety, his disturbance of mind, and his death by suicide was broken. See Pelmac, 174 N.H. at 542.

Finally, the petitioners' argument that the definition of "injury" in RSA 281-A:2, XI precluded a finding of compensability also fails. In defining

3

"injury," RSA 281-A:2, XI provides, in part, that "[n]o compensation shall be allowed to an employee for injury proximately caused by the employee's willful intention to injure himself or injure another." Based on this definition, the petitioners contend that because there is "no medical evidence" of an unbroken chain of causation and "no dispute" that the decedent "intended to end his life," his suicide is not compensable. However, as we concluded above, the CAB's determination that the decedent's "suicide is causally-related to [his] work injury" is supported by competent evidence in the record, including Drukteinis' expert opinion. Therefore, we disagree with the petitioners' assertion that there is "no medical evidence" of an unbroken chain of causation.

Accordingly, the decision of the CAB is affirmed.

<u>Affirmed</u>.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**