Compensation Appeals Board
No. 97-102

APPEAL OF CNA INSURANCE COMPANIES

(New Hampshire Compensation Appeals Board)

December 30, 1998

*Sulloway & Hollis, P.L.L.C.*, of Concord (*James E. Owers* and *Jennifer Shea Moeckel* on the brief, and *Mr. Owers* orally), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State.

JOHNSON, J. CNA Insurance Companies appeals a decision of the compensation appeals board (board) denying a petition for reimbursement from the second injury fund. *See* RSA 281:47-a (1987) (amended and recodified 1988, amended 1989). We reverse and remand.

Byron Emmons had been employed at Harris Graphics for about twenty years when he was injured on April 9, 1985. On that date, Emmons injured his knee on a machine after running into a skid. Emmons received workers' compensation benefits from Harris Graphics' workers' compensation carrier, CNA Insurance Companies (CNA), and underwent arthroscopic surgery in May 1985. Although his knee continued to bother him, Emmons returned to

work on July 15, 1985, with modified responsibilities. In August 1985, Emmons had fluid removed from his knee. On September 9, 1985, as Emmons picked up a casting weighing about fifteen pounds from a pallet at work, his knee gave out and he fell backwards onto the pallet of castings. He was treated at the Wentworth-Douglass Hospital, where he complained of severe back pain, a problem which he had never had before this incident. Emmons has not required any treatment for his knee since the back injury.

Harris Graphics terminated Emmons' employment on March 9, 1986. In June 1986, Harris Graphics notified the second injury fund of a possible claim based on Emmons' September 1985 injury. *See* RSA 281:47-a, VI.

Emmons was awarded temporary total disability benefits and received a lump sum settlement of $125,000 in November 1993 for the September 1985 injury. The second injury fund consented to the settlement. *See* RSA 281:48-a, IV (1987) (amended and recodified 1988, amended 1989). The second injury fund then denied CNA's request for reimbursement from the fund because Emmons "did not sustain a new work injury [on September 9, 1985,] but that it arose out of the prior work injury of [April 9, 1985]." Likewise, the board concluded that

> this case is not applicable for reimbursement from the second injury fund. This decision is based on the analysis of the Pane[l] that the claimant, although injured, did not suffer a second work related injury arising out of and in the course of employment as defined by New Hampshire Workers' Compensation Statutes.

On appeal, CNA argues that the board erred: (1) in concluding that CNA is not entitled to reimbursement from the second injury fund, where Emmons' April 1985 knee injury was a preexisting permanent impairment, and his September 1985 back injury, which subsequently disabled him, indisputably arose out of and in the course of his employment; (2) in basing its ultimate decision on its determination that Emmons' September 1985 back injury was not a "second injury" where former RSA 281:47-a, I, does not require a "second injury," but instead merely requires a "subsequent disability by injury"; and (3) in concluding that Emmons' injury was not a second injury, if the second injury requirement was proper, where the September 1985 injury caused him to experience new symptoms in his back, which was previously symptom-free, disabled him from working, and resulted in substantially greater workers' compensation liability.

On appeal, we will not set aside or vacate an administrative decision "except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Appeal of Dube*, 138 N.H. 155, 157-58, 636 A.2d 59, 61 (1993) (quotation omitted); *see* RSA 541:13 (1997). In interpreting a statute, we "cannot read words into it which the legislature did not see fit to insert." *Gregory v. State*, 117 N.H. 62, 63, 369 A.2d 181, 181-82 (1977) (quotation and brackets omitted). When construing a statute, "we ascribe the plain and ordinary meanings to words used." *Milette v. N.H. Retirement System*, 141 N.H. 342, 345, 683 A.2d 531, 532-33 (1996) (quotation omitted).

■ Although the second injury fund statute has been amended and recodified since Emmons' injury, *see* RSA 281-A:54 (Supp. 1998), the employee's injuries and the report to the fund occurred before the amendments and recodification. Accordingly, we apply the earlier version of the statute. *Cf. Appeal of Brown*, 143 N.H. 112, 113-17, 720 A.2d 66, 68-70 (1998) (applying law effective on date of injury).

Former RSA 281:47-a provides, in pertinent part:

I. If an employee who has a permanent physical or mental impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment on or after July 1, 1975 resulting in compensation liability for disability that is substantially greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation provided by this chapter . . . .

. . . .

III. In order to qualify under this section for reimbursement from the special fund, the employer shall establish by written records that the employer had knowledge of the permanent physical or mental impairment at the time that the employee was hired or at the time that employee was retained in employment after the employer acquired such knowledge.

The second injury fund was created to encourage employers to hire or retain employees with permanent physical or mental impairments of any origin by reducing the employer's liability for workers'

compensation claims. *See* RSA 281:47-a; N.H.H.R. JOUR. 80 (1947) (recommending "establishment of a second injury fund so as to encourage employment of physically handicapped persons"). To qualify for reimbursement, the employer's carrier must pay workers' compensation benefits to (1) an employee with a permanent physical or mental impairment from any cause or origin who (2) "incurs a subsequent disability by injury" (3) "arising out of and in the course of his employment" that (4) results in a greater workers' compensation liability "by reason of the combined effects of the preexisting impairment" than would have resulted from the subsequent injury alone. RSA 281:47-a, I. Further, the employer must establish "by written records that the employer had knowledge of the permanent physical or mental impairment at the time that . . . employee was retained in employment after the employer acquired such knowledge." RSA 281:47-a, III.

The statute does not preclude recovery from the fund if the "subsequent disability by injury" is either an aggravation or recurrence of the original disability. "Subsequent" is commonly understood to mean "following in time: coming or being later than something else." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2278 (unabridged ed. 1961). Likewise, "disability" is generally defined as "the inability to pursue an occupation or perform services for wages because of physical or mental impairment." *Id.* at 642. Finally, an "injury" is understood to be "an act that damages, harms, or hurts." *Id.* at 1164. The statute discusses "subsequent disability by injury" in general terms and does not distinguish among causes of future impairments. Had the legislature intended to limit the second injury fund to particular causes of disability, it could have expressly provided such limitations in the statute. *Cf. Brewster Academy v. Town of Wolfeboro*, 142 N.H. 382, 384-85, 701 A.2d 1240, 1241-42 (1997). We will not interpret RSA 281:47-a as narrowly as urged by the State because we "can neither ignore the plain language of the legislature nor add words which the lawmakers did not see fit to include." *Id.* (quotation omitted). Further, we liberally construe the workers' compensation statute, resolving reasonable doubts in statutory construction in favor of providing the broadest reasonable effect to its remedial purpose of compensating injured employees. *See Appeal of Lalime*, 141 N.H. 534, 537-38, 687 A.2d 994, 997 (1996).

■ Accordingly, an employer may receive reimbursement from the fund for its increased workers' compensation liability arising from a subsequent injury that leaves a previously permanently

impaired employee disabled. Although the title of the statute is "Payment for Second Injuries from Special Fund," the text does not mention the term "second injury," but instead requires only "subsequent disability." RSA 281:47-a, I. "The title of a statute is not conclusive of its interpretation, and where the statutory language is clear and unambiguous this court will not consider the title in determining the meaning of the statute." *State v. Kilgus*, 125 N.H. 739, 742, 484 A.2d 1208, 1212 (1984). Having determined that the words "subsequent disability by injury" are clear and unambiguous, we hold that the title of RSA 281:47-a does not affect the meaning of the statute and, therefore, does not require that the injured employee suffer a new and discrete injury before reimbursement from the fund becomes possible.

This case involves one employee, one employer, and one workers' compensation carrier. Accordingly, contrary to the State's argument, our case law governing the role of recurrences and aggravations in allocation of liability among successive insurers, *see, e.g., Appeal of Commercial Union Ins. Co.*, 140 N.H. 429, 431-32, 666 A.2d 987, 989-90 (1995); *Town of Hudson v. Wynott*, 128 N.H. 478, 482-83, 522 A.2d 974, 976 (1986); *Rumford Press v. Travelers Ins. Co.*, 125 N.H. 370, 372, 480 A.2d 162, 165 (1984); *Town of Goffstown v. Morgrange*, 122 N.H. 591, 593-94, 448 A.2d 385, 386 (1982), is not determinative in second injury fund claims involving a single insurer. Even assuming that RSA 281:47-a, I, required an employee to suffer a new injury for the employer to receive reimbursement from the fund, Emmons' September 1985 injury resulted in injury to his back, a body part previously uninjured and unrelated to his April 1985 knee injury.

Emmons' employment file contains two reports of injury: one for the April 1985 injury, and the second for the September 1985 injury. The report for the April 1985 injury indicates only that Emmons "bumped his knee on a cylinder skid," which resulted in a "contused" right knee. Our review of the record reveals that the first reference to any permanent impairment was in Dr. Lawrence M. Leonard's medical report dated March 5, 1986, four days before Emmons' employment with Harris Graphics ended, in which he concluded that although impaired, Emmons' impairment could not be rated because he had not reached the medical endpoint. However, Dr. Leonard did not indicate whether Emmons' permanent impairment resulted from the knee injury, from the back injury, or from the combined effects of the two injuries. Dr. Diambro reported in June 1986, several months after Emmons' employment with Harris Graphics ended, that Emmons' condition

is a complicated problem and it is going to be difficult to sift out the two [injuries], but certainly they are both related to his injury of April 1985 when he injured his knee and then because of the instability of the knee, he fell after having returned to work and sustained a back injury and disc injury.

Although Emmons now suffers from a permanent impairment, there was no evidence presented which indicated that the first injury resulted in a *permanent impairment*, a prerequisite for fund reimbursement. *See* RSA 281:47-a, I. Further, although Harris Graphics had documentary evidence of Emmons' first *injury* when Emmons was retained, the record does not indicate that Harris Graphics had any documentary evidence showing that it knew of Emmons' first *impairment* until near the time that Emmons' employment was terminated. Accordingly, we remand for a new hearing to determine whether: (1) Emmons' April 1985 injury resulted in a permanent impairment, *see id.*, and (2) whether Harris Graphics has documentary evidence showing that it knew of Emmons' permanent impairment at any point before Emmons sustained his second injury, *see* RSA 281:47-a, III.

*Reversed and remanded.*

All concurred.