NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Compensation Appeals Board
No. 2021-0243

APPEAL OF THE LAWSON GROUP & a.
(New Hampshire Compensation Appeals Board)

Argued: May 4, 2022
Opinion Issued: August 16, 2022

Bernard & Merrill, PLLC, of Manchester (Gary S. Harding on the brief and orally), for petitioner The Lawson Group.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (John F. Brown, attorney, on the brief and orally), for the State.

HICKS, J. Petitioner The Lawson Group, the third-party administrator for the self-insured petitioner, Summit Packaging Systems (the employer), appeals a decision of the New Hampshire Compensation Appeals Board (CAB) upholding the decision of the respondent, the State Special Fund for Second Injuries (Second Injury Fund), to decline to reimburse The Lawson Group for benefits paid to the claimant. We affirm.

The following facts either were found by the CAB or relate the content of documents in the record. The employer hired the claimant in 2005 as a laborer and machine operator. The claimant was injured at work in January 2016, when she tried to catch a 65-pound spool of tubing as it fell. She first sought medical treatment on January 13, 2016, reporting that she had radiating pain

into her left arm, numbness and tingling into her left index finger, and neck pain, and denying that she had any prior left arm or neck complaints. She was returned to work with modifications. At the end of January 2016, the claimant had an MRI scan, which showed disc degeneration, spondylolisthesis, facet hypertrophy, and foraminal stenosis at C5/6 and C6/7. She was referred to Dr. Sinkov, who administered trigger point injections for cervical nerve impingement. The claimant continued to work with job modifications and continued to receive medical treatment until September 12, 2016, when Dr. Sinkov performed a discectomy and fusion. The claimant was out of work following the surgery, but returned in December 2016 in a modified duty capacity. In 2017, the CAB found that the claimant's "surgery and subsequent treatment were and are related to the work injury" she suffered in January 2016.

In August 2018, The Lawson Group applied to the Second Injury Fund for reimbursement. The Lawson Group appended to its application: (1) a July 2018 certification from Dr. Forrest, stating that the claimant's preexisting permanent impairment was "C6-7 radiculopathy" on her left side, and that her subsequent work-related injury was the September 2016 cervical surgery; (2) a sworn statement by a representative of the employer that records attached to the statement "pre-date the date of the work-related injury that is the basis for reimbursement by the Second Injury Fund"; and (3) certain of the claimant's medical records from January 13, 2016, to March 2, 2018.

In a February 2019 letter, the Second Injury Fund denied The Lawson Group's application because The Lawson Group had failed to: (1) establish that the claimant's surgery constituted a subsequent disability by injury; and (2) demonstrate that the employer knew that the claimant had any permanent impairment before her surgery. The Lawson Group appealed to the CAB.

Following a March 2020 hearing, the CAB upheld the Second Injury Fund's denial of reimbursement. The CAB subsequently granted The Lawson Group's motion for rehearing and reheard the matter in December 2020. In a March 2021 decision, the CAB upheld the Second Injury Fund's decision to deny The Lawson Group's application for reimbursement because The Lawson Group had failed to: (1) "meet the written documentation requirement" of RSA 281-A:54, III (2010); (2) "show a subsequent disability by injury"; and (3) "show a prior and permanent injury." The Lawson Group moved for reconsideration, which the CAB denied. This appeal followed.

Our standard of review of CAB decisions is established by statute. See Appeal of Hartford Ins. Co., 162 N.H. 91, 92 (2011); RSA 541:13 (2021). All findings of the CAB upon all questions of fact properly before it are deemed prima facie lawful and reasonable. RSA 541:13. Accordingly, our review of the CAB's factual findings is deferential. Appeal of Hartford Ins. Co., 162 N.H. at 93. As the appealing party, The Lawson Group has the burden of

demonstrating that the CAB's decision is reversible.  See Appeal of Doody, 172 N.H. 802, 806 (2020).  We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable.  Id. at 805; see RSA 541:13.

Before addressing the parties' arguments, we provide a brief overview of the Second Injury Fund for context.  "The second injury fund was created to encourage employers to hire or retain employees with permanent physical or mental impairments of any origin by reducing the employer's liability for workers' compensation claims."  Appeal of Hartford Ins. Co., 162 N.H. at 93 (quotation omitted).  The implementing statute provides, in relevant parts:

> I.  If an employee who has a permanent physical or mental impairment, as defined in RSA 281-A:2, XIV, from any cause or origin incurs a subsequent disability by injury arising out of and in the course of such employee's employment on or after July 1, 1975, which results in compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or the employer's insurance carrier shall in the first instance pay all awards of compensation provided by this chapter.  However, the commissioner shall reimburse such employer or insurance carrier from the special fund created by RSA 281-A:55 for all compensation payments subsequent to those payable for the first 104 weeks of disability.  Provided, however, that prior to the first 104 weeks of disability, the employer shall be reimbursed 50 percent after the first $10,000 paid on all compensation for temporary total, temporary partial, permanent partial, permanent total, medical, or rehabilitation benefits for all injuries occurring on or after January 1, 1991.

> . . . .

> III.  In order to qualify under this section for reimbursement from the special fund, an employer shall establish by written records, or by affidavit executed at the time of hire or retention in employment, that the employer had knowledge of the employee's permanent physical or mental impairment at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge.

RSA 281-A:54, I, III (2010).  RSA 281-A:2, XIV, in turn, defines a "permanent physical or mental impairment" for the purpose of the Second Injury Fund as "any permanent condition that is congenital or due to injury or disease and that is of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should

3

become unemployed." RSA 281-A:2, XIV (2010). When considering whether a permanent condition "constitute[s] a hindrance or obstacle to obtaining employment," id., the proper "inquiry [is] whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee." Appeal of Hartford Ins. Co., 162 N.H. at 97 (quotation omitted).

> Thus, to qualify for reimbursement from the Second Injury Fund, a carrier must pay workers' compensation benefits to (1) an employee with a permanent physical or mental impairment from any cause or origin who (2) incurs a subsequent disability by injury (3) arising out of and in the course of his employment that (4) results in a greater workers' compensation liability by reason of the combined effects of the preexisting impairment than would have resulted from the subsequent injury alone. Further, the [carrier] must establish by written records that the employer had knowledge of the permanent physical or mental impairment at the time that [the] employee was [hired or] retained in employment after the employer acquired such knowledge.

Appeal of CNA Ins. Cos., 143 N.H. 270, 273 (1998) (quotations, citation, and ellipsis omitted) (interpreting prior version of statute).

On appeal, The Lawson Group argues that the CAB erroneously determined that The Lawson Group had failed to prove the claimant had a "permanent physical . . . impairment" and that she incurred "a subsequent disability by injury." RSA 281-A:54, I; see RSA 281-A:2, XIV. For the purposes of this appeal, we assume without deciding that the claimant's January 2016 injury constitutes a "permanent physical . . . impairment" and that her September 2016 surgery constitutes a "subsequent disability by injury" for the purposes of the Second Injury Fund. RSA 281-A:54, I; see RSA 281-A:2, XIV. Nonetheless, we uphold the CAB's decision because, as the CAB correctly ruled, The Lawson Group failed to establish that the employer "had knowledge" that the claimant's January 2016 injury resulted in a "permanent physical . . . impairment" when it retained her after the injury but before the surgery. RSA 281-A:54, III; see Appeal of CNA Ins. Cos., 143 N.H. at 275.

Our decision in Appeal of CNA Insurance Cos. is dispositive. The claimant in Appeal of CNA Insurance Cos. injured his knee at work in April 1985, about 20 years after he began employment with Harris Graphics. Appeal of CNA Ins. Cos., 143 N.H. at 270. Following arthroscopic surgery in May, he returned to work in July with modified responsibilities. Id. at 270-71. In September, the claimant injured his back when his knee gave out as he picked up a casting from a pallet and fell backwards. Id. at 271. The claimant's employment was terminated on March 9, 1986. Id. Harris Graphics and its workers' compensation carrier subsequently sought reimbursement from the

4

Second Injury Fund, claiming that the claimant's April knee injury "was a preexisting permanent impairment" and that his September back injury was a work-related, subsequent injury. Id.

One of the issues on appeal concerned whether the carrier's documentary evidence sufficiently established that the employer "had knowledge of the permanent physical or mental impairment at the time that the employee was . . . retained in employment after the employer acquired such knowledge." Id. at 272, 274-75 (quotation omitted). We noted that the record contained two reports of injury, one for the April knee injury and another for the September back injury. Id. at 274. We observed that "the first reference to any permanent impairment was in [a] . . . medical report dated March 5, 1986, four days before [the claimant's] employment with Harris Graphics ended." Id. at 274. In that report, the claimant's doctor had "concluded that although impaired, [the claimant's] impairment could not be rated because he had not reached the medical endpoint." Id. However, the doctor did not indicate whether the "permanent impairment resulted from the knee injury, from the back injury, or from the combined effects of the two injuries." Id.

We concluded that this record failed to establish either that the claimant's first injury "resulted in a permanent impairment," or that the employer "knew of the permanent impairment at any point before [the claimant] sustained his second injury." Id. at 275 (emphasis added). Regarding the employer's knowledge, the record established only that the employer knew that the claimant had a permanent impairment "near the time that [his] employment was terminated," which was insufficient. Id.; see id. at 274 (describing March 5, 1986 medical report). Having reversed the CAB's decision on other grounds, id. at 271, 274, we instructed that, on remand, the CAB should determine whether the claimant's "April 1985 injury resulted in a permanent impairment," and whether the employer had "documentary evidence showing that it knew of [the claimant's] permanent impairment at any point before [he] sustained his second injury," id. at 275.

Here, even if we assume that the claimant's January 2016 injury resulted in a permanent physical impairment, there is no evidence that the employer knew, before the September 2016 surgery, that the impairment resulting from the January 2016 injury was permanent. Indeed, the only explicit references in the record to the claimant having any permanent impairment are in 2018, long after her September 2016 surgery. The first reference in the record to the claimant having a permanent impairment is in a March 2018 treatment note in which Dr. Sinkov opined that her residual symptoms, which included neck pain and left-sided radiculopathy, "are likely permanent." The only other reference to the claimant having a permanent impairment is in Dr. Forrest's July 2018 description of her "C6-7 radiculopathy" as a "preexisting permanent impairment." As a matter of law,

these 2018 documents do not and cannot establish that the employer knew after January 2016 but before September 2016 that the claimant's January 2016 injury resulted in a permanent physical impairment.

Contrary to The Lawson Group's assertion, records showing that the claimant was returned to work in January 2016 with restrictions are insufficient to establish that the employer knew that the injury resulted in a permanent physical impairment. The claimant in Appeal of CNA Insurance Cos., like the claimant in this case, was returned to work with modifications after sustaining the first injury. Id. at 270-71. We implied that those records were insufficient when we stated, "[A]lthough Harris Graphics had documentary evidence of [the claimant's] first injury when [he] was retained, the record does not indicate that Harris Graphics had any documentary evidence showing that it knew of [his] first impairment until near the time that [his] employment was terminated." Id. at 275. Rather, we required the CAB to hold a new hearing to determine "whether Harris Graphics ha[d] documentary evidence showing that it knew of [the claimant's] permanent impairment at any point before [he] sustained his second injury." Id. As implied in Appeal of CNA Insurance Cos., knowledge of an employee's workplace injury and return to work with restrictions is insufficient to establish employer knowledge that the injury resulted in a permanent physical impairment. See id. at 270-71, 275.

Similarly insufficient to establish the employer's requisite knowledge is a March 2016 opinion of a physician retained by The Lawson Group that the claimant's "current symptoms should resolve within the next two to three months." Thus, we conclude that the CAB's determination that The Lawson Group failed to establish that the employer knew the January 2016 injury resulted in a permanent impairment when it retained her after that injury, but before the surgery, is not erroneous, unjust, or unreasonable. See Appeal of Doody, 172 N.H. at 805; RSA 541:13. As the CAB determined, The Lawson Group did not qualify for reimbursement from the Second Injury Fund because it failed to produce "written records. . . that the employer had knowledge of the employee's permanent physical or mental impairment at the time that the employee was . . . retained in employment after the employer acquired such knowledge." RSA 281-A:54, III. We, therefore, necessarily affirm the CAB's decision to uphold the Second Injury Fund's denial of reimbursement to The Lawson Group. Although the CAB provided an alternative basis for its decision, in light of our decision, we need not address The Lawson Group's argument that the CAB's alternative basis also constituted error.

The Lawson Group next argues that its procedural due process rights were violated because the CAB was not as impartial as Part I, Article 35 of the State Constitution requires. Due process requires a hearing before a fair and impartial decision-maker. Appeal of Pennichuck Water Works, 160 N.H. 18, 36 (2010); see N.H. CONST. pt. I, arts. 15, 35. Administrative officials who serve in an adjudicatory capacity are presumed to be of conscience and capable of

reaching a just and fair result.  <u>Appeal of Pennichuck Water Works</u>, 160 N.H. at 36.  The burden is upon the party alleging bias to present sufficient evidence to rebut this presumption.  <u>Id</u>.

The Lawson Group argues that the December 2020 rehearing was unfair because the CAB commingled an investigative function with its adjudicatory function and impermissibly prejudged the case.  However, "[w]e have long recognized that the legislature does not offend due process merely by assigning investigative and adjudicative functions to the same administrative body." <u>Appeal of Mullen</u>, 169 N.H. 392, 399 (2016).  "Where investigative, accusative, and adjudicative functions are commingled within a single administrative agency, a party alleging a due process violation must show actual bias to prevail."  <u>Id</u>.  Based upon our review of the record submitted on appeal, we conclude that The Lawson Group has failed to meet its burden to show actual bias.  <u>See</u> <u>id</u>.  It has failed to "establish that the [CAB] or any of its members . . . had a conflict of interest, entertained ill-will towards [The Lawson Group], or unalterably prejudged the facts."  <u>Appeal of Dell</u>, 140 N.H. 484, 497 (1995).  We, therefore, reject The Lawson Group's procedural due process argument.  For all of the above reasons, we affirm the CAB's decision to uphold the Second Injury Fund's denial of reimbursement to The Lawson Group.

<u>Affirmed</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7