# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0587, <u>Appeal of New Hampshire Department of Corrections & a.</u>, the court on December 13, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioners, the New Hampshire Department of Corrections (DOC) and DOC's third-party administrator, Constitution State Services, appeal a decision of the New Hampshire Compensation Appeals Board (CAB) upholding the decision of the respondent, the coordinator of the State Special Fund for Second Injuries (Second Injury Fund), declining to reimburse the petitioners for benefits paid to the claimant. <u>See</u> RSA 281-A:54, I (2023). The petitioners argue that the CAB erred by: (1) applying the wrong standard and requiring that the petitioners prove that the claimant suffered a second injury, rather than a "subsequent disability by injury"; (2) failing to provide findings regarding the issue of a greater combined disability and, instead, relying on the opinions of doctors who opined on the uncontested issue of causation; and (3) failing to consider another doctor's opinion on the issue of greater combined disability. The petitioners also argue that the CAB's finding of an absence of a "subsequent disability by injury" was unsupported by the evidence. We conclude that the CAB applied the incorrect standard as set forth in RSA 281-A:54, I, and <u>Appeal of CNA Insurance Cos.</u>, 143 N.H. 270 (1998), and accordingly, we vacate the CAB's ruling and remand.

The following facts are agreed upon by the parties or otherwise relate to the contents of the documents in the certified record before us. On May 8, 2019, the claimant, who was employed by DOC, suffered an accidental head injury while attending a work-related barbeque. Emergency responders transported the claimant by ambulance to the hospital, where the emergency room doctor diagnosed her with an unspecified head injury. Later that month, the claimant's primary care provider (PCP) diagnosed the claimant with a concussion and whiplash. The claimant's PCP noted that the claimant could not return to work until she was re-evaluated. The claimant began weekly follow-up visits with her PCP, and in June, she resumed working at DOC on a part-time basis. In July, the claimant experienced persistent concussion symptoms; her PCP diagnosed her with post-concussion syndrome and referred her for a neurology evaluation. From August to September, the claimant's PCP gradually increased the claimant's work hours. In September, the claimant met with a neurologist, Dr. Engstrand, who confirmed the post-concussion syndrome diagnosis, noting light sensitivity, headache, personality change,

cognitive changes, and poor short-term memory. In October, the claimant's PCP noted that the claimant's prognosis was "good" and released the claimant to full-time work duty. The claimant followed up with Engstrand in November, who again noted headaches and cognitive changes. In December, the claimant's condition worsened, and her PCP reduced the claimant's hours to half-time. In early January 2020, Engstrand placed the claimant out of work.

Prior to the dispute in this case, the claimant and DOC litigated a causation dispute related to the claimant's underlying workers' compensation claim. As part of that dispute, Engstrand and the DOC's medical expert, Dr. Saris, filed opposing reports. In his March 2020 report, Saris concluded that the claimant's ongoing symptoms were no longer related to her May 2019 injury. In her April 2020 report, Engstrand disagreed and concluded that the claimant's ongoing symptoms were caused by her May 2019 injury. The CAB considered these reports when determining whether the claimant incurred a "subsequent disability by injury" pursuant to RSA 281-A:54, I.

In August 2021, the third-party administrator for DOC applied for reimbursement from the Second Injury Fund pursuant to RSA 281-A:54, I, contending that the claimant suffered a "subsequent disability by injury" in January 2020. This application included an employer statement, a schedule of payments issued, and a medical report entitled "Second Injury Fund Certification by Physician," completed by Dr. Bourne, DOC's medical expert. In his report, Bourne opined that the claimant incurred two distinct impairments: (1) head injury with mild concussion and post-concussion syndrome; and (2) adjustment disorder with anxiety and depression. He also opined that the "combination of the two impairments cause[d] a substantially greater disability than would have been caused by the subsequent injury alone."

In October 2021, the Second Injury Fund denied the application, stating that:

> The Fund disagrees with [DOC and its third-party administrator's] position that [the claimant] had a subsequent disability by injury on 1/3/2020. The documentation submitted supports an ongoing issue that arose out of the 5/8/19 injury and doesn't support that a subsequent disability by injury that arose out of and in the course of employment occurred.

> The Fund disagrees with [DOC and its third-party administrator's] position that [the claimant's] subsequent disability by injury resulted in a compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone.

2

DOC and its third-party administrator appealed the denial to the CAB. The CAB considered two issues: "(1) [w]as there a subsequent disability by injury on January 3, 2020, or not; and (2) [w]hether there was compensation liability for a disability that is greater by reason of the combined effects of the pre-existing impairment than that which would have resulted from the subsequent injury alone."[1]  After a hearing, the CAB answered both questions in the negative and denied the application for reimbursement from the Second Injury Fund.  In its decision, the CAB explained that:

> We find that the medical opinions of Dr. Engstrand as being much more reasonable, logical and persuasive than those of Dr. Saris, the IME doctor, in determining whether there was a second injury or disability from an injury after May 8, 2019.
>
> On April 29, 2020 Dr. Engstrand wrote that she believed that there was only one disability from an injury (May 8, 2019).

The CAB denied DOC's motion for rehearing.  This appeal followed.

Our standard of review of CAB decisions is established by statute. Appeal of The Lawson Group, 175 N.H. 397, 399 (2022); see RSA 541:13 (2021).  All findings of the CAB upon all questions of fact properly before it are deemed prima facie lawful and reasonable.  Appeal of The Lawson Group, 175 N.H. at 399; RSA 541:13.  Accordingly, our review of the CAB's factual findings is deferential.  Appeal of The Lawson Group, 175 N.H. at 399.  As the appealing parties, the petitioners have the burden of demonstrating that the CAB's decision is reversible.  See id.  We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to

---

[1] Additionally, to qualify for reimbursement from the Second Injury Fund, the employee must have a "permanent physical or mental impairment, as defined in RSA 281-A:2, XIV," and the employer must have "knowledge of the employee's permanent physical or mental impairment at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge."  RSA 281-A:54, I & III (2023).  The Second Injury Fund, in its denial letter, only addressed two elements: (1) whether the claimant "had a subsequent disability by injury"; and (2) whether the claimant's "subsequent disability by injury resulted in a compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone."  See RSA 281-A:54, I.  DOC and its third-party administrator filed a motion in limine with the CAB requesting that the CAB limit the issues on appeal to these two issues.  Over the Second Injury Fund's objections, the CAB granted the motion, explaining that the Second Injury Fund "may contest any elements of the carriers' claims that it has set out in its denial letters, but is precluded from contesting any different elements of the carriers' respective claims for reimbursement that are not set out in the [denial letters]."  Accordingly, the CAB did not consider whether the claimant had a "permanent physical or mental impairment" or whether DOC had knowledge of such impairment, and thus, such questions are not before us on appeal.

3

be unjust or unreasonable.  Id.; see RSA 541:13.  We review the CAB's legal rulings de novo.  Appeal of Doody, 172 N.H. 802, 805 (2020).

For context, we begin by providing a brief overview of the Second Injury Fund.  "The second injury fund was created to encourage employers to hire or retain employees with permanent physical or mental impairments of any origin by reducing the employer's liability for workers' compensation claims."  Appeal of The Lawson Group, 175 N.H. at 400 (quotation omitted).

The implementing statute provides:

> If an employee who has a permanent physical or mental impairment, as defined in RSA 281-A:2, XIV, from any cause or origin incurs a subsequent disability by injury arising out of and in the course of such employee's employment on or after July 1, 1975, which results in compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or the employer's insurance carrier shall in the first instance pay all awards of compensation provided by this chapter.  However, the commissioner shall reimburse such employer or insurance carrier from the special fund created by RSA 281-A:55 for all compensation payments subsequent to those payable for the first 104 weeks of disability.  Provided, however, that prior to the first 104 weeks of disability, the employer shall be reimbursed 50 percent after the first $10,000 paid on all compensation for temporary total, temporary partial, permanent partial, permanent total, medical, or rehabilitation benefits for all injuries occurring on or after January 1, 1991.

RSA 281-A:54, I.  Thus, to qualify for reimbursement from the Second Injury Fund, a carrier must pay workers' compensation benefits to (1) an employee with a permanent physical or mental impairment from any cause or origin who (2) incurs a subsequent disability by injury (3) arising out of and in the course of employment that (4) results in a greater workers' compensation liability by reason of the combined effects of the preexisting impairment than would have resulted from the subsequent injury alone.  Appeal of The Lawson Group, 175 N.H. at 401; see also RSA 281-A:54, I; Appeal of CNA Ins. Cos., 143 N.H. at 273 (interpreting prior version of statute).

RSA 281-A:54, I, discusses "subsequent disability by injury" in general terms and "does not distinguish among causes of future impairments."  Appeal of CNA Ins. Cos., 143 N.H. at 273.  Thus, the statute does not preclude

4

recovery from the Second Injury Fund if the "subsequent disability by injury" is either an aggravation or recurrence of the original disability. Id. Had the legislature intended to limit reimbursement by the Second Injury Fund to particular causes of disability, it could have expressly provided such limitations in the statute. Id.

On appeal, the petitioners argue that the CAB erred by applying the incorrect standard by requiring DOC to prove that the claimant suffered a second injury rather than a "subsequent disability by injury." The Second Injury Fund agrees that the standard set forth in RSA 281-A:54, I, does not require a second injury but, rather, a "subsequent disability by injury," explaining that "[a]lthough reimbursement from the fund does not require that the injured employee suffered a new and discrete injury, it does require a subsequent disability." The Second Injury Fund maintains that the CAB applied the correct standard, arguing that "[i]n its decision, it is clear that the CAB reviewed the evidence to determine whether the employee suffered a subsequent disability not a second injury." Specifically, the Second Injury Fund argues that the claimant's "second disability was not different than the first . . . [n]or was the second period of disability an aggravation or recurrence of the disability." Instead, the Second Injury Fund asserts that the CAB correctly ruled that the claimant's "post-concussion syndrome was one, on-going, continuous disability." We conclude that RSA 281-A:54, I, and our holding in Appeal of CNA Insurance Cos. require DOC to prove a "subsequent disability by injury" rather than a second injury. We also agree with the petitioners that the CAB applied the incorrect standard.

In Appeal of CNA Insurance Cos., we considered an earlier version of the Second Injury Fund statute that contained nearly identical language to RSA 281-A:54, I. See Appeal of CNA Ins. Cos., 143 N.H. at 272. In that case, an employee injured his knee while at work. Id. at 270. After he underwent surgery, the employee returned to work. Id. at 270-71. Weeks later, while at work, the employee fell when the same knee gave out, causing the employee to injure his back. Id. at 271. His employer's workers' compensation carrier applied for reimbursement from the Second Injury Fund. Id. The Second Injury Fund denied the reimbursement, finding that the employee "did not sustain a new work injury . . . but that it arose out of the prior work injury." Id. (quotation omitted).

The CAB agreed with the Second Injury Fund, explaining that "the claimant, although injured, did not suffer a second work related injury arising out of and in the course of employment." Id. (quotation omitted). Our review of the record on appeal revealed that the medical records "did not indicate whether [the employee's] permanent impairment resulted from the knee injury, from the back injury, or from the combined effects of the two injuries." Id. at 274. Rather, the medical evidence indicated that the employee's condition posed a "complicated problem," because it was "difficult to sift out the two

5

[injuries]" because both injuries were "related to his [initial knee] injury." Id. at 275 (quotation omitted). Accordingly, we reversed the CAB's decision, holding that the Second Injury Fund statute "does not require that the injured employee suffer a new and discrete injury before reimbursement from the fund becomes possible." Id. at 274.

Here, the CAB found that the claimant did not suffer a disability by injury in January 2020. In reaching this decision, the CAB first found that the claimant suffered a "significant injury" from the May 8, 2019 accident, citing a post-accident report from the claimant's PCP. The CAB then concluded that there was only one disability from injury, quoting Engstrand's 2020 report that stated "all of [the claimant's] symptoms began after the trauma of 2019." By crediting Engstrand's report, the CAB impliedly determined that, because the claimant suffered from post-concussion syndrome immediately following the May 2019 incident and then continued to suffer from post-concussion syndrome in 2020 as a result of the May 2019 accident, the claimant did not suffer a "subsequent disability by injury" in January 2020. We conclude that the CAB misapplied the standard set forth in Appeal of CNA Insurance Cos. — in that case we rejected the argument that the subsequent disability must arise from a condition or injury unrelated to the original injury. See id.

In Appeal of CNA Insurance Cos., we observed that the statute discusses "subsequent disability by injury" in general terms and does not distinguish among causes of subsequent impairment. Id. at 273 (explaining that "[had] the legislature intended to limit the second injury fund to particular causes of disability, it could have expressly provided such limitations in the statute"). We then defined "subsequent" as "'following in time: coming or being later than something else.'" Id. (quoting Webster's Third New International Dictionary 2278 (unabridged ed. 1961)). We also defined "disability" as "'the inability to pursue an occupation or perform services for wages because of physical or mental impairment.'" Id. (quoting Webster's Third New International Dictionary 642 (unabridged ed. 1961)). We therefore concluded that, based upon its plain language, RSA 281-A:54, I, "does not preclude recovery from the fund if the 'subsequent disability by injury' is either an aggravation or recurrence of the original disability." Id.

In this case, the CAB relied upon the reports from the claimant's PCP and Engstrand to find that the claimant's post-concussion syndrome was one continuous disability rather than a "subsequent disability by injury." See RSA 281-A:54, I. The CAB, however, failed to consider that the claimant received a positive prognosis in October 2019 and returned to work full-time for three months following her 2019 injury and then left work for a second time in January 2020 after her symptoms began to worsen. The fact that the claimant's symptoms and diagnosis that resulted in the claimant's initial departure from work in January 2020 were the same as, or similar to, her symptoms and diagnosis resulting from the May 2019 injury does not preclude

6

a finding that the claimant experienced a "subsequent disability by injury" in January 2020.  See Appeal of CNA Ins. Cos., 143 N.H. at 273; RSA 281-A:54, I.  Therefore, the fact that Engstrand opined, and the CAB agreed, that the claimant's January 2020 symptoms and diagnosis were caused by the May 2019 injury does not preclude reimbursement.  See Appeal of CNA Ins. Cos., 143 N.H. at 273-74.  We agree with the petitioners that the CAB erroneously required DOC to prove a second injury and we further conclude that, when it considered whether the claimant incurred a "subsequent disability by injury" pursuant to RSA 281-A:54, I, the CAB failed to apply the standard set forth in Appeal of CNA Insurance Cos.

For the foregoing reasons, we vacate the CAB's ruling that the claimant did not suffer a "subsequent disability by injury" and remand for the CAB to apply the standard set forth in Appeal of CNA Insurance Cos. and to engage in further fact-finding as it deems necessary.  If, on remand, the CAB finds that the claimant suffered a "subsequent disability by injury," the CAB should then consider whether there was a "compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone."  RSA 281-A:54, I.

Vacated and remanded.

MacDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

7